UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------ X
NML CAPITAL, LTD.,

                Plaintiff,

        - against -

THE REPUBLIC OF ARGENTINA,

                Defendant.
------------------------------------------------------------------ X

08 Civ. 6978 (TPG)
09 Civ. 1707 (TPG)
09 Civ. 1708 (TPG)

# MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFF'S MOTIONS TO AMEND COMPLAINTS AND FOR PARTIAL SUMMARY JUDGMENT FOR PRINCIPAL AND INTEREST DUE

CLEARY GOTTLIEB STEEN & HAMILTON LLP
One Liberty Plaza
New York, New York 10006
(212) 225-2000

Attorneys for the Republic of Argentina

Of Counsel:

Jonathan I. Blackman
Carmine D. Boccuzzi

## TABLE OF CONTENTS

|     |     | Page |
| --- | --- | ---: |
| TABLE OF AUTHORITIES | | ii |
| PRELIMINARY STATEMENT | | 1 |
| BACKGROUND | | 2 |
| ARGUMENT | | 4 |
| I. | NML'S MOTION FOR LEAVE TO AMEND SHOULD BE DENIED | 4 |
| II. | NML IS NOT ENTITLED TO 9% STATUTORY INTEREST ON TOP OF POST-ACCELERATION OR POST-MATURITY INTEREST AT THE CONTRACT RATE | 8 |
| III. | RESERVATION OF RIGHTS | 11 |
| CONCLUSION | | 12 |

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

Astoria Fed. Sav. & Loan Ass'n v. Rambalakos,
49 A.D.2d 715 (2d Dep't 1975) .................................................................................... 9

Capital Ventures Int'l v. Republic of Argentina
552 F.3d 289 (2d Cir. 2009) ................................................................................ 2, 3-4, 8

County of Washington v. Counties of Warren and Washington Indus. Dev. Agency,
2 F. App'x 71 (2d Cir. 2001) ....................................................................................... 4

Cresswell v. Sullivan & Cromwell,
922 F.2d 60 (2d Cir. 1990), aff'd, 962 F.2d 2 (2d Cir. 1992) ...................................... 6

Fed. Nat'l Mortg. Ass'n v. Miller,
123 Misc.2d 431 (Sup. Ct. Nassau Cnty. 1984) .......................................................... 10

In re Solutia Inc.,
379 B.R. 473 (Bankr. S.D.N.Y. 2007) ......................................................................... 10

NML Capital v. Republic of Argentina,
621 F.3d 230 (2d Cir. 2010) ...................................................................................... 4, 8

O'Brien v. Young,
95 N.Y. 428 (1884) ...................................................................................................... 9

Scala v. Sequor Group,
No. 94 Civ. 0449 (LAP), 1995 WL 225625 (S.D.N.Y. Apr. 14, 1995) ...................... 4-5

Simons v. United States,
452 F.2d 1110 (2d Cir. 1971) ..................................................................................... 5

State Teachers Ret. Bd. v. Fluor Corp.,
654 F.2d 843 (2d Cir. 1981) ....................................................................................... 5

State Trading Corp. of India, Ltd. v. Assuranceforeningen Skuld,
921 F.2d 409 (2d Cir. 1990) ....................................................................................... 7

Stull v. Joseph Feld, Inc.,
34 A.D.2d 655 (2d Dep't 1970) ............................................................................... 9-10

Tal v. Superior Vending, LLC,
No. 11709/07, 2008 WL 2447365 (N.Y. Sup. Ct. Westchester Cnty. June 6, 2008), aff'd
sub nom., 71 A.D.3d 1153 (2d Dep't 2010) ................................................................. 6

|  | Page(s) |
|---|---|
| **Rules and Statutes** | |
| Fed. R. Civ. P. 12(b)(6) | 5 |
| Fed. R. Civ. P. 15(a) | 4 |
| N.Y. UCC § 8-102(a)(7) | 2 |
| **Other Authorities** | |
| C. Wright & A. Miller, Federal Practice and Procedure §1487 | 7 |

Defendant the Republic of Argentina (the "Republic") submits this memorandum of law in opposition to plaintiff NML's motions for leave to amend three complaints and for partial summary judgment on principal and interest due.[1]

## PRELIMINARY STATEMENT

NML moves to amend three of its complaints, filed in August 2008 and February 2009 (the "Complaints"),[2] in order to assert an erroneous pari passu claim that it was well aware of at the time the Complaints were filed, and yet decided as a tactical matter not to pursue. This belated motion must fail for the same reasons as NML's accompanying motions for partial summary judgment and injunctive relief pursuant to the pari passu clause (the "Pari Passu Motions"). The futility of asserting such a claim when NML's pari passu interpretation is wrong as a matter of law, NML's bad faith in admittedly delaying its assertion of a pari passu claim, and the resulting prejudice to the Republic and third parties, require that NML's leave to amend the Complaints at this late hour be denied.

NML is also not entitled to New York statutory interest on post-acceleration or post-maturity interest at the contractual rate. While NML does not explicitly raise the question of such "interest on interest" in its motions, its proposed amended complaint in *NML IX*

---

[1] Unless otherwise noted, exhibits are attached to the Declaration of Carmine D. Boccuzzi in support of the Republic's memorandum of law in opposition to plaintiff's motions to amend and for partial summary judgment on principal and interest due, dated December 10, 2010. The Republic's memorandum of law in opposition to plaintiff's motions for partial summary judgment and injunctive relief pursuant to the pari passu clause, dated December 10, 2010, is cited as "Rep. Inj. Opp."; plaintiff's memorandum of law in support of its motion to amend, dated October 20, 2010, is cited as "Pl. Mot. to Amend"; the Declaration of Robert A. Cohen in support of the motion to amend, dated October 18, 2010, is cited as "Cohen Amend Decl."; the Declaration of Elliot Greenberg in support of the motion for partial summary judgment for principal and interest due, dated October 18, 2010, is cited as "Greenberg SJ Decl."

[2] *NML Capital Ltd. v. Republic of Argentina*, No. 08 Civ. 6978 (TPG) ("*NML IX*"); *NML Capital Ltd. v. Republic of Argentina*, No. 09 Civ. 1707 (TPG) ("*NML X*"); *NML Capital Ltd. v. Republic of Argentina*, No. 09 Civ. 1708 (TPG) ("*NML XI*").

demonstrates its intent to demand both types of "interest on interest" in the future, in spite of the Second Circuit's decision in *Capital Ventures Int'l v. Republic of Argentina,* 552 F.3d 289, 296-97 (2d Cir. 2009) ("CVI"), *rehearing denied,* 07-1551-cv (2d Cir. Apr. 9, 2009), which denied interest on interest in the context of accelerated principal.

## BACKGROUND

The current motions concern three Complaints filed by NML in August 2008 and February 2009. The Complaints, like the eight previous complaints filed by NML since 2003, were filed without including a pari passu clause claim. This failure to plead a pari passu clause claim was undeniably intentional. As described in the Background to the Republic's opposition to the Pari Passu Motions, NML had fully developed its approach to a pari passu clause claim nearly seven years ago. *See* Letter from K. Reed to the Court, dated Jan. 14, 2004 (Ex. A); Rep. Inj. Mot. at 6-12. Instead of asserting the claim, however, NML aggressively opposed *every* effort by the Republic in 2004 and 2005 to protect its anticipated restructuring by having the Court resolve the pari passu question prior to the closing of the 2005 Exchange Offer, and emphatically disavowed any intent to pursue a pari passu clause claim. Rep. Inj. Opp. at 8-10.

Now, more than five years after the first alleged violations of the pari passu clause, nearly two years after filing the Complaints, and following the final closing of both of the Republic's Exchange Offers, NML has abruptly reversed course and filed this belated motion for leave to amend the Complaints to assert a pari passu clause claim.

In the declaration accompanying its summary judgment motion, NML reveals for the first time that, more than a year ago, it sold $15,860,000 of the beneficial interests[3] upon

---

[3] Although the technical term for what NML and other creditors hold is a "security entitlement" with respect to the bonds issued by the Republic, terms such as "beneficial interests," "interests," "bonds," or "bondholders" are also used for simplicity's sake. *See* N.Y. UCC § 8-102(a)(7).

2

which it had sued in *NML XI*.[4]  Greenberg SJ Decl. ¶¶ 24, 27, 31, 37, 43.  Nevertheless, NML failed to timely inform either the Court or the Republic of this important fact, and has instead *continued to seek and obtain attachments for the full principal amount* of beneficial interests listed in the *NML XI* complaint, including those that it knew it no longer owned, plus interest.  *See* Attachment Order, dated Jan. 11, 2010, at 3 (Ex. E) (claiming it was "probable" that NML would succeed on the merits for the inflated principal and interest, in attachment order concerning Banco Central de la República Argentina); Attachment Order, dated May 28, 2010, at 3 (Ex. G) (same, in attachment order concerning Banco de la Nación Argentina).  NML subsequently bought $179,000 in beneficial interests on July 2, 2010 – more than 16 months *after* the complaint was filed in *NML XI* on February 24, 2009.  *See* Greenberg SJ Decl. ¶ 24.  NML's current motion includes these July 2010 beneficial interests in its demand for summary judgment.  *Id.*

Finally, NML also seeks to amend its complaint in *NML IX*, so as to potentially assert a claim for New York statutory interest on both post-acceleration and post-maturity interest at the contractual rate.  In particular, NML appears to subscribe to the fiction that contractual interest payments continue to be "scheduled" for semiannual payment even *after* principal becomes fully due and owing, either through acceleration or maturity.  *See NML IX* Proposed Amended Compl. ¶¶ 40-46 (Cohen Amend Decl. Ex. B) (listing continued alleged unpaid interest payments after acceleration or maturity of the principal related to the beneficial interests at issue).

---

[4] NML filed the *NML XI* complaint in February 2009 alleging ownership of $156,570,549 in beneficial interests in Republic debt, but now alleges ownership only of $140,889,549 in beneficial interests.  *NML XI* Compl. at 19-20; *see NML XI* Proposed Amended Compl. at 23-24 (Cohen Amend Decl. Ex. C).

With regard to post-acceleration interest, in January 2009, the Second Circuit decided *CVI*, 552 F.3d at 296-97, affirming this Court's decision that New York statutory interest pursuant to C.P.L.R. Sections 5001 and 5004 did not continue to accrue on so-called phantom contractual interest payments after acceleration, *i.e.*, contractual interest payments that would have come due had the principal itself not become due and owing through acceleration. This Court, however, in a March 2009 decision in connection with the FRANs bond, distinguished *CVI* and held that 9% statutory interest continued to accrue on accrued interest at the contractual rate after maturity, *i.e.*, statutory interest would be calculated as if interest at the contractual rate continued to come due every six months despite the fact that the principal itself had become due and owing at maturity. *See* Opinion, dated Mar. 18, 2009, at 14 (Ex. D). The Republic appealed this decision, and the Second Circuit certified the questions of both post-maturity and post-acceleration interest to the New York Court of Appeals, which accepted the certification and established a briefing schedule. *See NML Capital v. Republic of Argentina*, 621 F.3d 230, 244 (2d Cir. 2010); Letter from the N.Y. Ct. of App., dated Oct. 19, 2010) ("N.Y. App. Letter") (Ex. H).

## ARGUMENT

### POINT I

### NML'S MOTION FOR LEAVE TO AMEND SHOULD BE DENIED

A district court may not grant a plaintiff leave to amend a complaint unless justice so requires. *See* Fed. R. Civ. P. 15(a). Accordingly, the Second Circuit has directed that "a motion to amend should be denied if there is 'an apparent or declared reason such as undue delay, bad faith . . . [or] futility of the amendment.'" *See County of Washington v. Counties of Warren and Washington Indus. Dev. Agency*, 2 F. App'x 71 (2d Cir. 2001) (citing *Foman v.*

4

*Davis*, 371 U.S. 178, 182 (1962)). Because all three of these enumerated reasons are present here, the Court should deny NML's motion.

*First*, NML's motion should be denied for futility because its proposed claims "would be subject to dismissal under Rule 12(b)(6) of the Federal Rules of Civil Procedure." *See Scala v. Sequor Grp.*, No. 94 Civ. 0449 (LAP), 1995 WL 225625, at *5 (S.D.N.Y. Apr. 14, 1995) (holding that futility is sufficient to deny leave to amend). As the Court is aware, Fed. R. Civ. P. 12(b)(6) requires dismissal of a claim for which no relief can be granted under any set of facts. Fed. R. Civ. P. 12(b)(6). As set forth in the Republic's Opposition to the Pari Passu Motions, NML's interpretation of the pari passu clause is wrong as a matter of law, and no facts set forth by NML can establish a violation of the clause under its correct interpretation. *See* Rep. Inj. Opp. Point II. This alone requires the Court to deny this motion. However, even if the facts in the record could support a claim for relief – which they do not – NML's motion for leave to amend must also be denied because its pari passu claim is barred by laches. *See* Rep.Inj. Opp Point I.; *see also Simons v. United States*, 452 F.2d 1110, 1116 (2d Cir. 1971) (dismissal pursuant to 12(b)(6) on the ground of laches is appropriate where the record reveals "no reason for the [movant's] inordinate and prejudicial delay").

*Second*, NML's motion should be denied for undue delay and bad faith because NML purposefully waited to launch its pari passu claim until after the 2010 Exchange Offer had closed, thereby increasing from 76% to 91% the unsuspecting bondholders whose payments would be disrupted, and who would become hostages to NML's demand to be paid several times more on the same debt than any other bondholder. *See State Teachers Ret. Bd. V. Fluor Corp.*, 654 F.2d 843, 856 (2d Cir. 1981) (undue delay and bad faith together provide a basis for denying a motion to amend); Pl. Mot. to Amend at 5 n.8. In NML's view in its proposed amended

complaints, bondholders tendering into the Republic's Exchange Offers did so in reliance on the assurance provided by the Lock Law that holdout creditors would not be offered better terms than they themselves had accepted. *See, e.g., NML IX* Proposed Amended Compl. ¶ 58 (Cohen Amend Decl. Ex. B). Given that reliance, NML's knowing refusal to challenge the Lock Law at a time that would have given bondholders the opportunity to fully evaluate the risks before tendering, is a clear sign of bad faith delay. Despite NML's protest that "there has been no delay," Pl. Mot. to Amend at 5, it is undisputed that over two years have passed since NML filed the first of the Complaints that it now seeks to amend and that it alleges no new facts that have occurred in the interim that would have been necessary – under plaintiff's erroneous interpretation – for NML to plead its pari passu claim. *See NML IX* Proposed Amended Compl. ¶¶ 47-66 (Cohen Amend Decl. Ex. B).

    NML also claims that there has been no "unfair surprise" because their erroneous pari passu clause interpretation "was first raised in this litigation" in late 2003. Pl. Mot. to Amend at 5. However, as described in the Republic's opposition to the Pari Passu Motions, NML in 2004 and 2005 *repeatedly* disavowed pursuit of a pari passu clause claim, leading the Court to decide it was unnecessary to resolve the issue. Rep. Inj. Opp. Part I.B, C. These disavowals and NML's utter silence on the subject during the events of the next six years reasonably led the Republic and its other bondholders and creditors to believe NML had truly renounced its "very odd" interpretation of the clause. Jan. 15, 2004 Hr'g Tr. at 14:10 (Ex. B); Rep. Inj. Opp. Part I.B, C; *see also Tal v. Superior Vending, LLC*, No. 11709/07, 2008 WL 2447365, at *15 (N.Y. Sup. Ct. Westchester Cnty. June 6, 2008) (noting that defendant could not have anticipated a second lawsuit when four years had passed since plaintiff first filed claims against him), *aff'd sub nom.*, 71 A.D.3d 1153 (2d Dep't 2010).

NML's motion should also be denied because it fails to meet its burden of providing any satisfactory explanation for the delay. *See Cresswell v. Sullivan & Cromwell*, 922 F.2d 60, 72 (2d Cir. 1990), *aff'd*, 962 F.2d 2 (2d Cir 1992). The one excuse NML purports to provide is that it waited until the completion of the 2010 Exchange Offer to bring this motion "in deference to" the Court's expressed reluctance to interfere with the Republic's Exchange Offers. Pl. Mot. to Amend at 5, n.8. However, the Court's stated reasoning for not enjoining the Exchange Offers was to protect the rights of holders of defaulted debt to evaluate for themselves the benefits of the Exchange Offer, and to be able to receive payments on new performing debt. *See, e.g.*, Apr. 15, 2010 Hr'g Tr. at 6:16-19, 6:25-7:12 (Ex. F). The injury to other bondholders from NML's current efforts to disrupt payments is certainly no less, now that those bondholders have irrevocably exchanged their previous bond interests for performing debt, upon the expectation that payments would continue.

NML's unreasonable delay based on purely tactical grounds warrants the denial of its motion.[5] *See State Trading Corp. of India v. Assuranceforeningen Skuld*, 921 F.2d 409, 417-18 (2d Cir. 1990) (denying leave to amend where the movant "deliberately chose" to wait an "unreasonably long" time to seek leave to amend for tactical reasons); *see also* C. Wright & A. Miller, Federal Practice and Procedure, §1487 n.63 (1971 and 1987 Supp.) ("Generally, when a plaintiff withholds his true position from his opponent, especially when done with an ulterior purpose, the Court may view the action as having a bad faith motive"). As described in the Republic's opposition to the Pari Passu Motions, NML had developed its pari passu theory by January 2004, and alleges that violations began and have been continuing since 2005. Rep. Inj.

---

[5] NML's pattern of bad faith and delay is also illustrated by the fact that it did not disclose to the Court or the Republic *for more than a year* that it had sold millions of dollars in beneficial interests upon which it had sued in *NML XI*; instead, NML continued to seek and obtain pre-judgment attachments for the amount of its prior holdings. *See supra* at 2-3.

7

Mem. at 6-12. Thus, when NML filed these Complaints in 2008 and early 2009, it is clear that it could have, but made the tactical choice not to, include a pari passu claim. It should not now be permitted to avoid the consequences for this undue delay. *See* Rep. Inj. Mem. Point I.

## POINT II

### NML IS NOT ENTITLED TO 9% STATUTORY INTEREST ON TOP OF POST-ACCELERATION OR POST-MATURITY INTEREST AT THE CONTRACT RATE

NML states that it seeks partial summary judgment as to "principal and interest" due. While NML does not explain exactly what type of interest it seeks here, its proposed amendment of the *NML IX* complaint and past litigation in the context of the FRANs bond raise the probability that NML will seek statutory interest on top of both post-acceleration and post-maturity interest at the contract rate. *See NML IX* Proposed Amended Compl. ¶¶ 40-46 (Cohen Amend Decl. Ex. B).

The Republic recognizes that questions bearing on NML's entitlement to statutory interest both post-acceleration and post-maturity were certified by the Second Circuit to the New York Court of Appeals on September 23, 2010, following the Republic's appeal of this Court's March 2009 opinion in *NML II* and related FRANs actions. *NML Capital, Ltd*, 621 F.3d at 244. The Court of Appeals accepted such certification on October 13, 2010, and briefing is currently pending in the Court of Appeals on the certified questions. *See* N.Y. App. Letter, dated Oct. 19, 2010 (Ex. H). Accordingly, the Republic would ask the Court to defer decision on the topic of post-maturity or post-acceleration statutory interest until after the conclusion of the New York Court of Appeals certification proceedings and the related Second Circuit appeal.

The Republic raises this issue here simply to eliminate any possibility that NML can later argue that it is entitled to such improper interest based on purported waiver. Should the Court decide to consider the issue, it should rule that NML is not entitled under New York

8

C.P.L.R. Sections 5001(a) and 5004 to post-maturity and post-acceleration 9% statutory interest on top of interest at the contract rate, consistent with the Second Circuit's decision in *CVI*. In *CVI,* the Second Circuit affirmed this Court's denial of 9% statutory interest on accrued contract interest for the period after plaintiff accelerated maturity, holding that such an unusual result should not be inferred in the absence of clear intent in the bond contract, and that no such intent had been shown. 552 F.3d at 297. Likewise, here, as in *CVI*, plaintiffs are entitled only to interest on principal at the contract rate, and not further interest on that interest, for the period after the bonds reached maturity – whether by acceleration or otherwise.

New York courts have long held that language stating that the debtor agrees to pay interest "until the principal hereof is paid" – which was at issue in *CVI*, and also appears in the global notes here – entitles the creditor to receive interest on unpaid principal at the contract rate *in lieu of* the statutory rate for the period after maturity or acceleration until the unpaid principal is merged into a judgment. The phrase does not, and has never been held to, mean that scheduled periodic interest payments are required to continue after maturity or acceleration, or that creditors are entitled to interest at *both* the contractual and statutory rates for this period. *See O'Brien v. Young*, 95 N.Y. 428, 430 (1884) ("[W]hen the contract provides that the interest shall be at a specified rate *until the principal shall be paid*, then the contract rate governs until payment of the principal, or until the contract is merged in a judgment.") (emphasis added); *Astoria Fed. Sav. & Loan Ass'n v. Rambalakos*, 49 A.D.2d 715, 716 (2d Dep't 1975) (where mortgage stated that "interest shall be paid at the rate specified in the bond, which required interest at 8.5% Per annum until the principal is [fully] paid," the "contract rate, rather than the statutory rate, governs the rate of interest after maturity and before judgment.").

9

Moreover, as NML recognized in an amicus brief filed in support of CVI's petition in the Second Circuit for panel rehearing or rehearing *en banc*, the phrase "until the principal hereof is paid" has the same meaning in the context of accelerated maturity or original maturity. NML *Amicus* Br. in *CVI*, 07-1551-cv (2d Cir. Feb. 24, 2009), at 13 (Ex. C) ("There is no reasonable basis for this distinction [between accelerated and original maturity]. Acceleration of maturity, like original maturity, simply causes the principal amount of the debt to become due and payable immediately."); *see also Stull v. Joseph Feld, Inc.*, 34 A.D.2d 655, 656 (2d Dep't 1970) ("[A]fter maturity *(or default that accelerates maturity)* the rate of interest is to be computed at the rate then prescribed by statute. But when the contract provides that interest shall be paid at a specified rate until the principal shall be paid, the contract rate governs until payment of the principal, or until the contract is merged in a judgment.") (emphasis added); *Fed. Nat'l Mortg. Ass'n v. Miller*, 123 Misc.2d 431, 432 (Sup. Ct. Nassau Cnty. 1984) ("In New York the rule is that an affirmative exercise by a mortgagee of an option to accelerate upon defendant's default *has the effect of maturing* the mortgage since the debt has been changed from one payable in the future and in installments to one payable immediately.") (emphasis added); *In re Solutia Inc.*, 379 B.R. 473, 484 (Bankr. S.D.N.Y. 2007) ("Acceleration moves the maturity date from the original maturity date to the acceleration date and that date becomes the new maturity date.").

Accordingly, NML is not entitled to receive 9% statutory interest on top of pre-judgment interest on principal at the contract rate for the period post-acceleration or post-maturity.

## POINT III

## RESERVATION OF RIGHTS

On February 22, 2007 the Court signed a memorandum (the "Memorandum") setting a streamlined summary judgment procedure for the bondholder actions filed against the Republic. Pursuant to paragraph 5 of the Memorandum, "the Republic need not object to proof the Republic considers insufficient, but which the Court has previously accepted as adequate. In such a situation, the Republic's non-objection does not act as a waiver of the issue and the Republic preserves such issue for all purposes, including appeal."

NML has a total of eleven actions pending against the Republic. The Court has granted NML's motions for summary judgment in NML I through NML VIII, on the basis of evidence the sufficiency of which was objected to by the Republic. *See, e.g.*, Reservation of Rights Concerning Insufficient Documentary Evidence, in *NML Capital, Ltd. v. Republic of Argentina*, No. 08 Civ. 3302 (TPG), dated Aug. 28, 2008. The evidence on the present motion is similar in kind to the previously submitted evidence. *See* Global Settled Holdings COB Report, dated Oct. 14, 2010; Consolidated Settlement ITD Reports (Greenberg SJ Decl. Exs. 1, 2). NML has improperly redacted purchase price information from most of the proof offered in support of the motion, and has not provided the Republic with any other type of discovery. In addition, given the evidence of NML's previous sales of beneficial interests that were subject to these suits, without notification of either the Court or the Republic, *see supra* 2-3, NML should be required to confirm their continued ownership by providing updated proof at the time of entry of any judgment.

Accordingly, the Republic reserves its rights and preserves for appeal all objections to the deficiencies in NML's proof, including that NML seeks a multi-million dollar

judgment based on improperly authenticated hearsay that does not properly establish current ownership of the bonds in the principal amount alleged by NML.

## CONCLUSION

For the foregoing reasons, NML's motions for leave to amend the three Complaints and for partial summary judgment on principal and interest due should be denied.

Dated: New York, New York
       December 10, 2010

Respectfully submitted,

CLEARY GOTTLIEB STEEN & HAMILTON LLP

By: __/s/ Carmine Boccuzzi_____
    Jonathan I. Blackman (jblackman@cgsh.com)
    Carmine D. Boccuzzi (cboccuzzi@cgsh.com)

One Liberty Plaza
New York, New York 10006
(212) 225-2000

Attorneys for the Republic of Argentina