UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------- x

|  |  |  |
|---|---|---|
|  | : | 03 Civ. 8845 (TPG) |
| NML CAPITAL, LTD., | : | 05 Civ. 2434 (TPG) |
|  | : | 06 Civ. 6466 (TPG) |
| Plaintiff, | : | 07 Civ. 1910 (TPG) |
|  | : | 07 Civ. 2690 (TPG) |
| v. | : | 07 Civ. 6563 (TPG) |
|  | : | 08 Civ. 2541 (TPG) |
| THE REPUBLIC OF ARGENTINA, | : | 08 Civ. 3302 (TPG) |
|  | : | 08 Civ. 6978 (TPG) |
| Defendant. | : | 09 Civ. 1707 (TPG) |
|  | : | 09 Civ. 1708 (TPG) |

------------------------------------------------------- x

## MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S MOTION TO COMPEL COMPLIANCE WITH DISCOVERY REQUESTS <u>DIRECTED TO DEFENDANT THE REPUBLIC OF ARGENTINA</u>

DECHERT LLP
Robert A. Cohen
(robert.cohen@dechert.com)
Eric C. Kirsch
(eric.kirsch@dechert.com)

1095 Avenue of the Americas
New York, New York  10036
Telephone:  (212) 698-3500
Fax:  (212) 698-3599

*Attorneys for Plaintiff NML Capital, Ltd.*

June 27, 2013

14974675

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ................................................................................. 1

BACKGROUND .................................................................................................. 3

I. ARGENTINA'S USE OF PURPORTEDLY SEPARATE ENTITIES TO ATTEMPT TO EVADE JUDGMENT ENFORCEMENT ............................. 3

    A. The Banco Hipotecario Trust Account ................................................ 3

    B. The ANPCT Account............................................................................ 4

    C. ANSES ................................................................................................. 4

    D. BCRA.................................................................................................... 5

II. THE SECOND CIRCUIT HOLDS THAT ASSET DISCOVERY DOES NOT IMPLICATE IMMUNITY ................................................................ 6

III. THIS COURT HOLDS THAT THE SECOND CIRCUIT'S RULING APPLIES TO REQUESTS DIRECTED TO ARGENTINA.............................. 8

IV. NML'S DISCOVERY REQUESTS TO ARGENTINA ................................. 10

ARGUMENT ..................................................................................................... 11

I. ARGENTINA CANNOT INVOKE IMMUNITY WITH RESPECT TO THE DISCOVERY REQUESTS .............................................................. 11

    A. Immunity Is Irrelevant To Asset Discovery........................................ 11

    B. Immunity Is Irrelevant To Alter Ego Discovery................................. 12

II. NML'S REQUESTS ARE WITHIN THE BROAD SCOPE OF POST-JUDGMENT ASSET DISCOVERY ............................................................ 15

    A. Argentina Should Be Compelled To Provide All Information And Documents Requested In the Asset Requests ..................................... 16

    B. Argentina Should Be Compelled To Provide All Information And Documents Requested In the Alter Ego Requests ............................... 17

CONCLUSION.................................................................................................. 20

# TABLE OF AUTHORITIES

## CASES

*Aurelius Capital Partners, LP v. Republic of Argentina*,
  2009 WL 755231 (S.D.N.Y. Mar. 12, 2009) ............................................................5

*Aurelius Capital Partners, LP v. Republic of Argentina*,
  584 F.3d 120 (2d Cir. 2009)..................................................................................5

*Aurelius Capital Partners v. Republic of Argentina*,
  2013 WL 857730 (S.D.N.Y. Mar. 7, 2013) ...................................................10, 12

*EM Ltd. v. Republic of Argentina*,
  2009 WL 2568433 (S.D.N.Y. Aug 18, 2009) .........................................................4

*EM Ltd. v. Republic of Argentina*,
  389 Fed. App'x 38 (2d Cir. 2010)..........................................................................4

*EM Ltd. v. Republic of Argentina*,
  695 F.3d 201 (2d Cir. 2012)......................................................................... passim

*EM Ltd. v. Republic of Argentina*,
  720 F. Supp. 2d 273 (S.D.N.Y. 2010)..............................................................5, 18

*First City, Texas-Houston, N.A. v. Rafidain Bank* ("*Rafidain I*"),
  150 F.3d 172 (2d Cir. 1998)..........................................................................13, 14

*First City, Texas-Houston, N.A. v. Rafidain Bank* ("*Rafidain II*"),
  281 F.3d 48 (2d Cir. 2002)...................................................................................12

*Jones v. Coughlin*,
  45 F. 3d 677 (2d Cir. 1995)...................................................................................8

*NML Capital, Ltd. v. Banco Central de la Republica Argentina*,
  652 F.3d 172 (2d Cir. 2011)..............................................................................5, 19

*NML Capital, Ltd. v. Excelerate Energy, LLC*,
  2011 WL 10618710 (S.D. Tex. Feb. 8, 2011) ......................................................15

*NML Capital, Ltd. v. Republic of Argentina*,
  680 F.3d 254 (2d Cir. 2012)...................................................................................4

*NML Capital, Ltd. v. Republic of Argentina*,
  699 F.3d 246 (2d Cir. 2012)...................................................................................3

*Ryan Inv. Corp. v. Pedregal de Cabo San Lucas*,
  2009 WL 5114077 (N.D. Cal. Dec. 18, 3332009) ................................................15

**STATUTES AND RULES**

C.P.L.R. § 5223..................................................................................................................15

Fed. R. Civ. P. 69..............................................................................................................15

**OTHER AUTHORITIES**

David D. Siegel, New York Practice § 509 (5th ed. 2011)..........................................15

Plaintiff NML Capital, Ltd. ("NML"), through its attorneys, Dechert LLP, respectfully submits this memorandum of law in support of its motion, pursuant to Rules 26, 37, and 69 of the Federal Rules of Civil Procedure and Article 52 of the New York Civil Practice Law and Rules, for an order compelling defendant the Republic of Argentina ("Argentina") to produce all documents requested in Plaintiff's Discovery Requests To Defendant The Republic Of Argentina, dated August 14, 2012 (the "Discovery Requests")[1] and to respond in full to all interrogatories contained in the Discovery Requests.

## PRELIMINARY STATEMENT

Through this motion, NML seeks an order compelling Argentina to provide information about its assets located in whole or in part in the United States and about certain entities that appear to be its alter egos—two topics squarely within the scope of permissible post-judgment discovery. Rather than complying with the Discovery Requests, Argentina again is attempting to delay discovery through objections that are devoid of merit under directly applicable Second Circuit precedent. Argentina's stall tactics should not be countenanced.

The Discovery Requests are at the core of proper post-judgment discovery. A judgment creditor clearly is entitled to serve discovery requests requiring a judgment debtor to disclose its assets, which is exactly what NML has done in the Discovery Requests. Similarly, discovery regarding alter ego relationships is central to judgment enforcement because such discovery enables a judgment creditor to execute upon assets that nominally are held by a non-party, but in reality are at the disposal of the judgment debtor.

NML's past judgment enforcement efforts demonstrate that the Discovery Requests are targeted at information that can materially advance its future efforts. NML has successfully

---

[1]    A copy of the Discovery Requests is attached as Exhibit A to the Declaration of Eric C. Kirsch, dated June 27, 2013 (the "Kirsch Decl.").

executed on Argentine assets held in the name of Argentina's ministries, sub-ministries, and constituent entities—illustrating the importance of discovery regarding assets that belong to Argentina, but which are held in the name of a ministry rather than in the name of the "Republic of Argentina."  Moreover, NML has been successful in establishing the existence of alter ego relationships between Argentina and purportedly separate entities, and then executing upon assets held in the name of those alter egos.  The Discovery Requests are narrowly tailored to build on NML's past successes by seeking information regarding all Argentine assets with a connection to the United States—no matter which ministry or entity nominally holds the assets— and information directly relevant to establishing the existence of additional alter ego relationships.

        This Court should end Argentina's obstruction, overrule its objections, and compel it to comply in full with the Discovery Requests.  *First*, the Second Circuit has expressly rejected the objections that Argentina is asserting, holding that once a foreign state waives immunity—as Argentina has—it becomes subject to this Court's jurisdiction and must comply with discovery to the same extent as any other defendant.  Moreover, the Second Circuit has twice held that discovery (including jurisdictional discovery) cannot impinge on a foreign state's immunity if it is sought from any entity other than the foreign state itself.  Because NML is seeking alter ego discovery from Argentina, which has no immunity, the Discovery Requests cannot intrude on any immunity that its alter egos may have.

        *Second*, the Discovery Requests are well within the broad scope of proper post-judgment discovery because they are tailored to asset discovery issues and alter ego discovery issues.  The Discovery Requests are likely to lead to attachments and executions that can help satisfy NML's

judgments, both by revealing assets that are subject to execution and by assisting NML in establishing its right to execute on assets held in the name of alter egos.

## BACKGROUND

### I.    Argentina's Use Of Purportedly Separate Entities
####         To Attempt To Evade Judgment Enforcement

This Court has repeatedly observed that Argentina takes extraordinary measures to prevent its creditors from collecting any portion of the amounts owed to them. *See*, *e.g.*, Kirsch Decl. Ex. B (8/30/11 Tr.) at 10-11 ("So one of the things that has gone on is, for the Republic to use every possible device to avoid having property in the United States to get attached or executed on. … [T]he tactics that have gone on to avoid paying these judgments, it has gone on year after year after year, and it will keep going on."); Kirsch Decl. Ex. C (5/28/09 Tr.) at 14:8-11 ("The Republic of Argentina is the defendant in these actions.  They have defaulted on millions of dollars of debt.  They are doing everything they can to resist paying legitimate judgment debts."); *NML Capital, Ltd. v. Republic of Argentina*, 699 F.3d 246, 262 (2d Cir. 2012) (describing Argentina's "persistent efforts to frustrate the collection of money judgments").  One such measure—which NML has demonstrated on multiple occasions, and examples of which are set forth below—is holding assets and conducting transactions through its ministries, sub-ministries, and other constituent entities, all of which are part of Argentina itself.

####         A.    The Banco Hipotecario Trust Account

In May 2007, NML served an order of attachment on U.S. Bank Trust, N.A., seeking to attach assets held in a trust account of which Banco de la Nación Argentina ("BNA") was the trustee, the *Fideicomiso de Asistencia al Fondo Fiduciario Federal de Infraestructura Regional* was the beneficiary, and the *Fondo Fiduciario Federal de Infraestructura Regional* was the residual beneficiary (the "Banco Hipotecario Trust Account").  This Court held that the Banco

Hipotecario Trust Account was a self-settled trust—and therefore that the trust property was subject to attachment and execution—because the trust's beneficiary and the residual beneficiary were alter egos of Argentina. *EM Ltd. v. Republic of Argentina*, 2009 WL 2568433, at *8 (S.D.N.Y. Aug 18, 2009). The Second Circuit affirmed, and the Supreme Court denied Argentina's petition for a writ of certiorari. *EM Ltd. v. Republic of Argentina*, 389 Fed. App'x 38 (2d Cir. 2010). The Banco Hipotecario Trust Account was the first asset with respect to which NML obtained a final, non-appealable order permitting execution.

### B.    The ANPCT Account

In September 2008, NML served an order of attachment on BNA, in response to which BNA disclosed the existence of an account held in the name of the *Secretaria de Programación Economica – Programa de Modernizacion Tecnologia* (the "ANPCT Account") that was used to purchase scientific equipment in the United States. *NML Capital, Ltd. v. Republic of Argentina*, 680 F.3d 254, 256 (2d Cir. 2012). This Court held that the ANPCT Account was subject to attachment and execution, the Second Circuit affirmed, and the Supreme Court denied Argentina's petition for a writ of certiorari. *Id.* at 260. The ANPCT Account was the second asset with respect to which NML obtained a final, non-appealable order permitting execution.

### C.    ANSES

On October 31, 2008, NML obtained an order of attachment directed to assets held by certain private pension funds that were subject to pending expropriation legislation. After the expropriation legislation became effective, the assets were transferred to the *Administración Nacional de la Seguridad Social* ("ANSES"), which is the Argentine version of the Social Security Administration. This Court held that ANSES is part of Argentina itself—and therefore not subject to a presumption of separateness—under the doctrine set forth in *Garb v. Republic of*

*Poland*, 440 F.3d 579 (2d Cir. 2006), because ANSES's core functions are governmental in nature. *Aurelius Capital Partners, LP v. Republic of Argentina*, 2009 WL 755231, at *11 (S.D.N.Y. Mar. 12, 2009).  This Court also held that the attached assets were used for a commercial activity in the United States. *Id*.  Although the Second Circuit reversed, holding that ANSES had not used the attached assets for a commercial activity in the United States, the Second Circuit did not disturb this Court's conclusion that ANSES is Argentina under the *Garb* test. *Aurelius Capital Partners, LP v. Republic of Argentina*, 584 F.3d 120 (2d Cir. 2009).

### D.    BCRA

On December 30, 2005, NML obtained an order of attachment directed to funds held in the name of *Banco Central de la República Argentina* ("BCRA").  In extensive litigation relating to the attachment, NML demonstrated that Argentina regularly uses BCRA's reserves to pay its own debts, that Argentina replaces BCRA's officials at will, that Argentina controls nearly all of BCRA's activities, and that Argentina dictates the monetary policy implemented by BCRA. This Court confirmed NML's attachment, holding that BCRA is Argentina's alter ego and that BCRA's assets were used for a commercial activity in the United States. *EM Ltd. v. Republic of Argentina*, 720 F. Supp. 2d 273 (S.D.N.Y. 2010).  Although the Second Circuit reversed, holding that the particular assets attached by NML were immune from execution under Section 1611 of the Foreign Sovereign Immunities Act (the "FSIA"), it did not disturb this Court's conclusion that BCRA is the alter ego of Argentina. *NML Capital, Ltd. v. Banco Central de la Republica Argentina*, 652 F.3d 172 (2d Cir. 2011).  Moreover, the Second Circuit held that NML can attach BCRA's assets in the United States to the extent NML can demonstrate that they are "not being used for central banking functions as such functions are normally understood, irrespective of their 'commercial' nature." *Id.* at 194.

## II.      The Second Circuit Holds That Asset Discovery Does Not Implicate Immunity.

On March 10, 2010, NML served a subpoena on Bank of America seeking information about, among other things, "accounts maintained … in the name of Argentina, beneficially held in whole or in part by Argentina, or for which Argentina is a signatory"; electronic fund transfers that were sent through the Society for Worldwide Interbank Financial Telecommunication ("SWIFT") system[2]; "commercial or standby letters of credit … including but not limited to invoices and bills of lading"; and "outstanding loans for which Argentina is listed as the borrower or guarantor."  Kirsch Decl. Ex. D.   On June 14, 2010, NML served a subpoena on BNA seeking similar information.  Kirsch Decl. Ex. E.

Because Argentina acts through numerous ministries, sub-ministries, and other entities that are part of the Republic itself, and because one of Argentina's tactics for evading judgment enforcement efforts is holding assets and conducting transactions in the name of such entities, NML's subpoena to Bank of America defined "Argentina" to include Argentina's "agencies, ministries, instrumentalities, political subdivisions, employees, attorneys, representatives, affiliates, subsidiaries, predecessors, alter-egos, and assigns, and all other Persons acting or purporting to act for or on Argentina's behalf."  Kirsch Decl. Ex. D at 4.  NML's subpoena to BNA contained a similar definition.  Kirsch Decl. Ex. E at Attachment A.  During the meet-and-confer process, in response to an objection that BNA was not in a position to determine which Argentine entities met this definition, NML agreed to provide a list of entities falling within the definition of "Argentina."  Kirsch Decl. Ex. F.

---

[2]      Banks use the SWIFT system to send and receive international electronic fund transfers, and transfers involving U.S. dollars are often routed through intermediary banks in New York.

On May 17, 2010, Argentina moved to quash the subpoena directed to Bank of America, arguing that it impermissibly sought "breathtakingly expansive" categories of information, that the definition of "Argentina" was overly broad because it included ministries and purportedly separate entities, that "there is no carve-out in the Subpoena excluding diplomatic accounts" or "exclud[ing] military property," and that NML had failed to show that an exception to immunity applied to the assets about which NML sought discovery. Kirsch Decl. Ex. G. All of these arguments were rejected.

At a hearing on August 30, 2011, this Court denied Argentina's motion to quash and compelled compliance with the Bank of America and BNA subpoenas, subject to modifications that would reduce the burden of the subpoenas on the banks. The Court held:

> We are not really talking about a fishing expedition or a lot of unknowns. There is now a focus. And I think that at least what the Court realizes now is that the Republic, through various entities, can very well be engaged in commercial activities in various places or activity which might involve attachable assets on some other theory in a foreign country.
>
> So please don't talk about fishing expeditions. What do you expect these people to do? They have to engage in these maneuvers because of your client's behavior. And these plaintiffs now have come forward with a very credible theory illustrated by the Honeywell situation that the Republic may be purchasing abroad, may be investing abroad, may be doing a lot of things outside of Argentina which could be the subject of attachments. That's their theory. It is not fishing.

Kirsch Decl Ex. B at 42:6-20. On September 2, 2011, the Court entered an order compelling compliance with the subpoenas for the reasons stated on the record at the August 30 hearing (the "2011 Discovery Order"). Kirsch Decl. Ex. H.

Argentina appealed the 2011 Discovery Order, and on August 20, 2012, the Second Circuit affirmed. *EM Ltd. v. Republic of Argentina*, 695 F.3d 201 (2d Cir. 2012). The Second Circuit reaffirmed that "broad postjudgment discovery in aid of execution is the norm in federal

and New York state courts" and that "[it is not] unusual for the judgment creditor to seek disclosure related to assets held outside the jurisdiction of the court where the discovery request is made." *Id.* at 207-08.

The Second Circuit then rejected Argentina's immunity arguments, holding that "[o]nce the district court had subject matter and personal jurisdiction over Argentina, it could exercise its judicial power over Argentina as over any other party, including ordering third-party compliance with the disclosure requirements of the Federal Rules." *Id.* at 209.  Moreover, the Second Circuit rejected Argentina's argument that discovery must be tied to an immunity determination:

> Whether a particular sovereign asset is immune from attachment must be determined separately under the FSIA, but this determination does not affect discovery. Whatever hurdles NML will face before ultimately attaching Argentina's property abroad (and we have no doubt there will be some), it need not satisfy the stringent requirements for attachment in order to simply receive information about Argentina's assets.

*Id*.  Merely obtaining discovery about an asset "does not implicate Argentina's immunity from attachment under the FSIA." *Id.*  at 208.

On October 10, 2012, the Second Circuit denied Argentina's motion for rehearing, and it issued its mandate on October 17, 2012.  The Second Circuit's ruling thus is final and binding on Argentina.  Although Argentina has a pending petition for a writ of certiorari, *EM Ltd.* is binding.  *See Jones v. Coughlin*, 45 F. 3d 677, 679 (2d Cir. 1995) (a pending petition for certiorari is irrelevant because a "decision of a panel of this Court is binding unless and until it is overruled by the Court *en banc* or by the Supreme Court.").

### III.   This Court Holds That The Second Circuit's Ruling Applies To Requests Directed To Argentina.

On December 13, 2011, Aurelius Capital Partners, L.P. and its co-plaintiffs (collectively, "Aurelius") served Requests for Production on Argentina seeking information regarding its

assets.  Aurelius also served eighteen subpoenas on non-party banks seeking information regarding Argentina's assets.  In response, Argentina moved for a protective order with respect to the Requests for Production and moved to quash the subpoenas, arguing that Aurelius's requests lacked a territorial limitation and were outside the scope of discovery permissible under the FSIA.

On March 7, 2013, this Court denied both of Argentina's motions.  With respect to Argentina's objection relating to a lack of a territorial limitation in the Aurelius requests, the Court held:

> First, the Republic argues that the subpoenas are too broad given the lack of territorial restriction. This objection must be assessed in light of the fact that this court has stated that "there should be a program of discovery directed to the Republic" requiring the Republic to produce information concerning "contracts it ... or some branch of the Republic is entering into anywhere, United States or Germany or France or anywhere," as well as "any financing it is doing, any financing of any kind."  This court has stated that it intends to serve as a "clearinghouse for information," in plaintiffs' efforts to find and attach the Republic's assets. Accordingly, this court has found, and the Second Circuit has affirmed, that the lack of territorial limitation is not itself problematic, and materials abroad are not irrelevant to the plaintiffs' case.

> Plaintiffs are allowed to seek discovery to understand Argentina's financial circulatory system—to locate Argentina's assets and accounts, and learn how Argentina moves these assets through New York and throughout the world. The recognized territorial limitation is that discovery should not be targeted to assets located in Argentina, as the FSIA would clearly not allow plaintiffs to seize these assets. The subpoenas appear to comply with this understanding and thus are appropriately tailored geographically.

With respect to Argentina's FSIA objections, the Court held:

> Aside from arguing that the subpoenas are overly broad, the Republic also makes numerous arguments that the scope of the subpoenas exceeds the permissible bound of the FSIA.  For example, the Republic argues that the FSIA limits the scope of execution-related discovery to assets located in the United States.

> However, as the Republic concedes, these are the same arguments this court and the Second Circuit have previously rejected. The Second Circuit specifically held that "because the district court ordered only discovery, not the attachment of sovereign property ... Argentina's sovereign immunity is not affected." This court therefore again rejects the Republic's arguments that the FSIA prohibits the discovery sought.

*Aurelius Capital Partners v. Republic of Argentina*, 2013 WL 857730, at*2-3 (S.D.N.Y. Mar. 7, 2013) (citations omitted).

## IV.   <u>NML's Discovery Requests To Argentina</u>

On August 14, 2011, NML served the Discovery Requests on Argentina, certain of which seek information regarding Argentina's assets (the "Asset Requests") and certain of which seek information regarding Argentina's alter egos (the "Alter Ego Requests").  Kirsch Decl. Ex. A at 6-14.  The Asset Requests seek information and documents relating to:

- "accounts maintained inside the United States";

- "commercial or standby letters of credit … for which any part of the underlying transaction is to involve assets or parties located in whole or in part inside the United States";

- "outstanding loans (including repurchase agreements) … for which the loan proceeds are to be paid or received in whole or in part inside the United States"; and

- "any asset or property of any kind whatsoever located in whole or in part inside the United States" that is owned by Argentina or by Argentina in the name of ANSES.

*Id.* at 6-7, 10-11.  The Alter Ego Requests seek information and documents relating to four potential alter egos of Argentina: BCRA, BNA, Energía Argentina S.A., and Yacimientos Petroliferos Fiscales (collectively, the "Argentine Alter Egos").  *Id.* at 7-10, 11-14.  The Alter Ego Requests are limited to information that can establish an alter ego relationship, such as information regarding debts of Argentina that were paid by the Argentine Alter Egos, the organization of the Argentine Alter Egos, overlap between the directors of the Argentine Alter

-10-

Egos and government ministries, and communications between the Argentine Alter Egos and the government ministries that control them.

On September 27, 2012, Argentina served "The Republic Of Argentina's Responses And Objections To Plaintiffs' Interrogatories And Document Requests" (the "Responses and Objections").  Kirsch Decl. Ex. I.  Argentina objected because, among other reasons, the discovery requests purportedly are outside the scope of discovery permitted by the FSIA, because they seek information regarding purportedly immune property, and because they are "untetherered from any specific immunity determination."  In response to the Asset Requests, Argentina provided the highly qualified response that it does not have any assets "used for a commercial activity in the United States," and it refused to provide any information regarding ANSES—even though this Court has held that ANSES is liable for Argentina's debts.  In response to the Alter Ego Requests, Argentina provided limited information, such as the Argentine Alter Egos' charters and lists of their current officers.  However, Argentina refused to produce any of the other information NML requested, objecting that the Argentine Alter Egos are not liable for Argentina's debts.

## ARGUMENT

### I.  Argentina Cannot Invoke Immunity With Respect To The Discovery Requests.

#### A.  Immunity Is Irrelevant To Asset Discovery.

Post-judgment asset discovery does not implicate sovereign immunity, regardless of whether an asset might be immune from execution, because Argentina indisputably is subject to this Court's jurisdiction.  This Court should therefore overrule all of Argentina's immunity-based objections to the Asset Requests.

"[T]he district court's power to order discovery to enforce its judgment does not derive from its ultimate ability to attach the property in question but from its power to conduct supplementary proceedings, involving persons indisputably within its jurisdiction, to enforce valid judgments." *EM Ltd.*, 695 F.3d at 208.  This principle is confirmed by the fact that post-judgment asset discovery is worldwide in nature—and thus necessarily may reveal assets that cannot be executed upon in domestic judgment enforcement proceedings.  *See id.* at 207-08 ("[I]n a run-of-the-mill execution proceeding, we have no doubt that the district court would have been within its discretion to order the discovery from third-party banks about the judgment debtor's assets located outside the United States."); *First City, Texas-Houston, N.A. v. Rafidain Bank* ("*Rafidain II*"), 281 F.3d 48, 54 (2d Cir. 2002) (holding that judgment creditors are entitled to discovery regarding assets "wherever located").

The Second Circuit also left no doubt that Argentina, having waived its immunity, is subject to discovery like any other litigant:

> Argentina does not (and could not) argue that the district court lacked subject matter or personal jurisdiction over it because Argentina expressly waived any claim to immunity in the bond agreements.  Once the district court had subject matter and personal jurisdiction over Argentina, it could exercise its judicial power over Argentina as over any other party … .

*EM Ltd.*, 695 F.3d at 209.  Although *EM Ltd.* was decided in the context of subpoenas directed to non-parties, this Court has already ruled in *Aurelius* that the Second Circuit's holding is equally applicable to discovery sought directly from Argentina.  *Aurelius Capital Partners*, 2013 WL 857730, at *3.

**B.    Immunity Is Irrelevant To Alter Ego Discovery.**

The Second Circuit has twice held that discovery does not impinge on a foreign state's immunity if it is sought from any entity other than the foreign state itself.  NML is seeking

discovery from Argentina—which indisputably has waived its sovereign immunity—about the Argentine Alter Egos.  NML's requests do not intrude on any party's immunity because Argentina has no immunity from discovery, and the discovery is not being sought directly from the Argentine Alter Egos.

In *First City, Texas-Houston, N.A. v. Rafidain Bank* ("*Rafidain I*"), the Second Circuit held that jurisdictional discovery does not intrude on the immunity of a foreign state if the discovery is sought from a different entity.  150 F.3d 172, 177 (2d Cir. 1998).  The plaintiff, First City, obtained default judgments against Rafidain Bank and the Central Bank of Iraq ("CBI"), both of which were instrumentalities of a foreign state and presumptively immune from jurisdiction under the FSIA.  The district court denied Rafidain's motion to vacate its default, finding that Rafidain was properly served and that it fell within the commercial activity exception to immunity from jurisdiction.  After First City obtained limited discovery regarding whether CBI was Rafidain's alter ego, the district court dismissed the claims against CBI, holding that First City had not established the existence of an alter ego relationship.  The Second Circuit reversed, holding that First City should have been allowed to obtain full discovery from Rafidain regarding its alleged alter ego relationship with CBI.

The Second Circuit's reasoning in *Rafidain I* turned on two key facts: Rafidain was subject to the district court's jurisdiction, and the alter ego discovery about CBI was sought from Rafidain, rather than CBI.  The Second Circuit explained:

> Because Rafidain is a party to this suit, has been found to fit within the FSIA's "commercial activity" exception and because First City has a judgment against Rafidain, allowing First City to seek further discovery from Rafidain would not intrude upon the sovereign immunity, if any, of Rafidain. The district court should have permitted full discovery against Rafidain, which would have allowed First City a fair opportunity to conduct jurisdictional discovery without further impinging on CBI's immunity.

-13-

> Following discovery from Rafidain, the district court would then have been in a better position to assess whether discovery from CBI on the alter ego question was sufficiently likely to be productive as to warrant compelling additional jurisdictional discovery.

*Rafidain I*, 150 F.3d at 177.

*Rafidain I* is directly on point with respect to NML's alter ego requests.  Both First City's case and NML's cases are post-judgment.  Both Rafidain and Argentina are "foreign states" over which jurisdiction was obtained through Section 1605 of the FSIA:  because of a waiver for Argentina, and because of the commercial activity exception for Rafidain.  Both CBI and the Argentine Alter Egos may be entitled to immunity absent an alter ego finding.  First City failed in its first attempt to establish an alter ego case against CBI, and NML has had varying degrees of success establishing alter ego cases against the Argentine Alter Egos.  Finally, both First City and NML tailored their discovery requests to seek information relevant to the existence of an alter ego relationship.  Because *Rafidain I* directly parallels this case, it conclusively establishes that NML is entitled to the alter ego discovery that it seeks.

The Second Circuit's decision in *EM Ltd.* confirms the *Rafidain I* analysis.  There the Second Circuit held that because Argentina waived its immunity, this Court can "exercise its judicial power over Argentina as over any other party."  *EM Ltd.*, 695 F.3d at 209.  Moreover, the Second Circuit confirmed the distinction it drew in *Rafidain I*:  A court should be circumspect in ordering discovery ***from*** foreign states over which the court has not yet obtained jurisdiction, but no immunity concerns exist with respect to discovery ***about*** such foreign states.  As the Second Circuit explained:

> Because sovereign immunity protects a sovereign from the expense, intrusiveness, and hassle of litigation, a court must be "circumspect" in allowing discovery before the plaintiff has established that the court has jurisdiction over a foreign sovereign defendant under the FSIA.  But NML seeks discovery from a

-14-

> defendant over which the district court indisputably had
> jurisdiction. Thus, the concerns voiced in *Rafidain I* are not
> present and our precedents relating to jurisdictional discovery are
> inapplicable.

*Id.* at 210. Argentina thus cannot rely on immunity to avoid responding in full to the Alter Ego

Requests.

## II.   NML's Requests Are Within The Broad Scope Of Post-Judgment Asset Discovery.

"[B]road postjudgment discovery in aid of execution is the norm in federal and New

York state courts." *EM Ltd.*, 695 F.3d at 207; s*ee also NML Capital, Ltd. v. Excelerate Energy,*

*LLC*, 2011 WL 10618710, at *4 (S.D. Tex. Feb. 8, 2011) ("[T]he judgment creditor should be

permitted to conduct a broad inquiry to uncover any hidden or concealed assets") (quoting 13

James Wm. Moore et al., Moore's Federal Practice—Civil § 69.04 (2008)); *Ryan Inv. Corp. v.*

*Pedregal de Cabo San Lucas*, 2009 WL 5114077, at *1 (N.D. Cal. Dec. 18, 2009) ("A judgment

creditor is [] ordinarily entitled to a very thorough examination of a judgment debtor with respect

to its assets" (quotation omitted)).  Under the Federal Rules, discovery need only be "reasonably

calculated to lead to attachable property." *EM Ltd.*, 695 F.3d at 205.

The same broad post-judgment discovery is available in New York judgment

enforcement proceedings, which are available to judgment creditors through Rule 69. *See* Fed.

R. Civ. P. 69(b) ("In aid of the judgment or execution, the judgment creditor or a successor in

interest whose interest appears of record may obtain discovery from any person—including the

judgment debtor—as provided in these rules or by the procedure of the state where the court is

located.").  New York judgment creditors are entitled to "***all matter*** relevant to the satisfaction of

the judgment." N.Y. C.P.L.R. § 5223 (emphasis added).  This is "a broad criterion authorizing

investigation through any person shown to have any light to shed on the subject of the judgment

debtor's assets or their whereabouts."   David D. Siegel, New York Practice § 509 (5th ed. 2011).

### A.     Argentina Should Be Compelled To Provide All Information And Documents Requested In the Asset Requests.

Argentina represented in its Responses and Objections that it has no assets "used for a commercial activity in the United States," Kirsch Decl. Ex. I at 5-7, 14, but this response is inadequate for two reasons.  First, Argentina's judgment as to what property is "used for a commercial activity in the United States" is unreliable at best.  Second, Argentina's representations are limited to "the Republic," which Argentina has defined as "the Republic of Argentina."  Given that Argentina frequently holds its assets in the names of its ministries, sub-ministries, and constituent entities, it should be required to expressly address whether any property is held in the names of such entities.

To the best of NML's knowledge, Argentina has never conceded in a single proceeding involving any creditor anywhere in the world that any of its property is subject to attachment and execution.  When creditors served asset discovery requests on Argentina early in efforts to enforce Argentina's defaulted debt, Argentina represented—as it has here—that it had no property used for a commercial activity in the United States.  Kirsch Decl. Ex. J at 4.  This representation was proven false by the ANPCT Account and Banco Hipotecario Trust Account, both of which were within the scope of NML's requests.  After NML discovered these accounts through other means, Argentina steadfastly maintained that neither the ANPCT Account nor the Banco Hipotecario Trust Account were used for a commercial activity in the United States, even though the Second Circuit had no difficulty affirming this Court's rulings that they were.  In light of this record, Argentina cannot be relied upon to determine what assets are used for a commercial activity in the United States.

Argentina therefore should be compelled to disclose *all* of its property in the United States.  Some of that property may well be immune; however, the Second Circuit made clear that

this is irrelevant to discovery because any such immunity can be asserted if NML initiates execution proceedings. *EM Ltd.*, 695 F.3d at 210 ("[I]f and when NML moves past the discovery stage and attempts to execute against Argentina's property, Argentina will be protected by principles of sovereign immunity in this country or in others, to the extent that immunity has not been waived. The Discovery Order at issue here, however, does nothing to endanger Argentina's sovereign immunity."). Moreover, as this Court has observed, NML's discovery efforts are necessary only because Argentina has never engaged its creditors in a good faith effort to resolve these actions. Kirsch Decl. Ex. B (8/30/11 Tr.) at 44:13-15 ("If there is a problem, talk to the Republic. Talk to Cleary Gottlieb primarily. They are the cause of this."). This Court should not allow Argentina to bootstrap its intransigence into this Court exercising its discretion to restrict discovery that does not implicate any immunity.

Argentina also should be compelled to make express representations with respect to the existence of property held in the name of its ministries, sub-ministries, and constituent entities. The ANPCT Account, the Banco Hipotecario Trust Account, the ANSES assets, and the BCRA assets all demonstrate that Argentina has held property in the United States in the names of such entities. Express representations on this issue are essential for NML and the Court to understand whether Argentina's responses satisfy its obligation to respond.

**B.    Argentina Should Be Compelled To Provide All Information
        And Documents Requested In the Alter Ego Requests.**

Each of the Alter Ego Requests seeks information that is directly relevant to showing whether an alter ego relationship exists between Argentina and the Argentine Alter Egos, and Argentina has omitted the most important information sought by NML from the limited production that accompanied its objections. Given Argentina's history of holding assets in the

name of its alter egos, complete responses to the Alter Ego Requests will materially increase the likelihood of NML successfully attaching and executing upon Argentine assets.

NML's Alter Ego Requests seek information demonstrating that the purported separateness of the Argentine Alter Egos is a sham and should be disregarded. For example, NML is seeking information regarding each instance in which the Argentine Alter Egos have paid Argentina's debts—the type of fact that was critical to this Court's determination that BCRA is an alter ego of the Republic. *See EM Ltd. v. Republic of Argentina*, 720 F. Supp. 2d at 300 ("The management of BCRA posed no obstacles to the Republic's use of the resources of BCRA exactly as the Republic wished. The Republic's control in this regard was complete. The court concludes that the presumption of separateness is overcome, and that BCRA was the servant or the agent of the Republic as to its funds, within the meaning of the *Bancec* case."). Similarly, NML has requested communications between the Argentine Alter Egos and Argentina, which NML expects will demonstrate Argentina's control of the Argentine Alter Egos' decision-making processes.

The minimal amount of information produced by Argentina in response to the Alter Ego Requests, such as copies of charters and lists of current officers, is the type of information that Argentina might use to attempt to establish the legal separateness of the Argentine Alter Egos. *See* Kirsch Decl. Ex. I at Ex. A. Selectively producing only such information favorable to Argentina misses the point of discovery. The information that Argentina omitted from its discovery responses is the information that NML expects will show that Argentina ran roughshod over whatever formal legal separateness the Argentine Alter Egos have and treated them as if they were part of Argentina itself.

Argentina's history of holding assets and conducting transactions in the United States in the name of its alter egos demonstrates the value of discovery establishing the Argentine Alter Egos' liability for Argentina's debts.  Although the Second Circuit has held that certain specific assets of some alter egos were not subject to execution at the time they were attached by NML (such as the $100 million that BCRA held at the Federal Reserve Bank of New York and the securities that were expropriated into ANSES), the Second Circuit has left the door open to future attachments of those alter egos' property.  *See*, *e.g.*, *NML Capital, Ltd.*, 652 F.3d at 194 (holding that BCRA assets in the United States are attachable upon NML "demonstrating with specificity that the funds are not being used for central banking functions as such functions are normally understood, irrespective of their 'commercial' nature").  The Alter Ego Requests will help NML establish the existence of additional alter ego relationships, thereby expanding the number of assets that NML can pursue and materially increasing the likelihood of NML successfully executing upon Argentine assets and satisfying the judgments it has obtained.

**<u>CONCLUSION</u>**

For the foregoing reasons, NML respectfully requests that the Court issue an order

compelling Argentina to produce all documents requested in the Discovery Requests and to

respond in full to all interrogatories contained in the Discovery Requests

Dated:  New York, NY
        June 27, 2013

                                DECHERT LLP


                        By:     /s/ Robert A. Cohen
                                Robert A. Cohen
                                (robert.cohen@dechert.com)
                                Eric C. Kirsch
                                (eric.kirsch@dechert.com)

                                1095 Avenue of the Americas
                                New York, New York  10036
                                Telephone:  (212) 698-3500
                                Facsimile:  (212) 698-3599

                                *Attorneys for Plaintiff NML Capital, Ltd.*