UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------ x
                         :

NML CAPITAL, LTD.,                :    08 Civ. 6978 (TPG)
                         :    09 Civ. 1707 (TPG)
Plaintiff,                  :    09 Civ. 1708 (TPG)
                         :

v.                         :

THE REPUBLIC OF ARGENTINA,    :

         Defendant.        :

------------------------------------------------ x
                          :

AURELIUS CAPITAL MASTER, LTD. and   :
ACP MASTER, LTD.,         :    09 Civ. 8757 (TPG)
                       :    09 Civ. 10620 (TPG)
Plaintiffs,              :

v.                         :

THE REPUBLIC OF ARGENTINA,    :

Defendant.            :

------------------------------------------------ x
                          :

AURELIUS OPPORTUNITIES FUND II, LLC  :
and AURELIUS CAPITAL MASTER, LTD.,  :    10 Civ. 1602 (TPG)
                       :    10 Civ. 3507 (TPG)
Plaintiffs,              :

v.                         :

THE REPUBLIC OF ARGENTINA,    :

Defendant.            :    **(captions continued on next page)**

------------------------------------------------ x

## **MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' MOTION FOR DECLARATORY AND SUPPLEMENTAL INJUNCTIVE RELIEF**

```
-----------------------------------------  :
AURELIUS CAPITAL MASTER, LTD. and           :
AURELIUS OPPORTUNITIES FUND II,             :     10 Civ. 3970 (TPG)
LLC,                                        :     10 Civ. 8339 (TPG)
                                            :
        Plaintiffs,                         :
                                            :
v.                                          :
                                            :
THE REPUBLIC OF ARGENTINA,                  :
                                            :
        Defendant.                          x
-----------------------------------------
BLUE ANGEL CAPITAL I LLC,                   :
                                            :
        Plaintiff,                          :     10 Civ. 4101 (TPG)
                                            :     10 Civ. 4782 (TPG)
v.                                          :
                                            :
THE REPUBLIC OF ARGENTINA,                  :
                                            :
        Defendant.                          :
-----------------------------------------  x
OLIFANT FUND, LTD.,                         :
                                            :
        Plaintiff,                          :     10 Civ. 9587 (TPG)
                                            :
v.                                          :
                                            :
THE REPUBLIC OF ARGENTINA,                  :
                                            :
        Defendant.                          :
-----------------------------------------  x
PABLO ALBERTO VARELA, et al.,               :
                                            :
        Plaintiff,                          :     10 Civ. 5338 (TPG)
                                            :
v.                                          :
                                            :
THE REPUBLIC OF ARGENTINA,                  :
                                            :
                Defendant.                  :
-----------------------------------------  x
```

# TABLE OF CONTENTS

**Page**

INTRODUCTION ................................................................................................ 1

BACKGROUND ................................................................................................ 3

ARGUMENT ................................................................................................ 9

    I.    The Memorandum Is Not Privileged. ................................................................ 9

        A.    Publication Of The Memorandum Vitiates Any Privilege That Might Have Attached To The Memorandum. .................................................... 10

        B.    The Memorandum Is Not Privileged Because It Perpetuates A Fraud On This Court. ....................................................................................... 12

    II.    Supplemental Relief Is Warranted. ................................................................ 14

        A.    Argentina Has Violated This Court's October 3 Order. ............................ 14

        B.    This Court Should Order Disclosure Of Any Scheme To Remove Payment Mechanisms From This Court's Jurisdiction. .......................................... 15

        C.    A Supplemental Injunction Should Be Issued to Clarify This Court's Prohibition Of Evasion Tactics. ............................................................. 16

CONCLUSION ................................................................................................ 17

## TABLE OF AUTHORITIES

Page(s)

### Cases

*Bank of Crete, S.A. v. Koskotas*, 733 F. Supp. 648 (S.D.N.Y. 1990) ............................................ 16

*Bus. Integration Servs., Inc. v. AT & T Corp.*, 251 F.R.D. 121 (S.D.N.Y. 2008) ......................... 9

*Chevron Corp. v. Donziger*, No. 11 CIV. 0691 LAK JCF, 2013 WL 4045326 (S.D.N.Y. Aug. 9, 2013) ...................................................................................................................................... 12

*Falise v. Am. Tobacco Co.*, 193 F.R.D. 73 (E.D.N.Y. 2000) ................................................. 10, 11

*Fisher v. United States*, 425 U.S. 391 (1976) ............................................................................. 10

*In re von Bulow*, 828 F.2d 94 (2d Cir. 1987) .............................................................................. 11

*Intellect Wireless, Inc. v. HTC Corp.*, No. 09 C 2945, 2014 WL 1797488 (N.D. Ill. May 6, 2014) ..................................................................................................................................... 12

*Madden v. Creative Servs., Inc.*, 646 N.E.2d 780 (N.Y. 1995) ................................................... 10

*N.A. Sales Co., Inc. v. Chapman Indus. Corp.*, 736 F.2d 854 (2d Cir. 1984) ............................. 16

*New York v. Shore Realty Corp.*, 763 F.2d 49 (2d Cir. 1985) ..................................................... 15

*NML Capital, Ltd. v. Republic of Argentina*, 699 F.3d 246 (2d Cir. 2012) ................................... 4

*NML Capital, Ltd. v. Republic of Argentina*, 727 F.3d 230 (2d Cir. 2013) ................................... 6

*Priest v. Hennessy*, 409 N.E.2d 983 (N.Y. 1980) ....................................................................... 10

*Sarkar v. Pathak*, 889 N.Y.S.2d 184 (N.Y. App. Div. 2009) ...................................................... 13

*Surgical Design Corp. v. Correa*, 727 N.Y.S.2d 462 (N.Y. App. Div. 2001) ............................. 12

*United States v. City of New York*, 717 F.3d 72 (2d Cir. 2013) .................................................. 15

*United States v. Goldberger & Dubin, P.C.*, 935 F.2d 501, 504 (2d Cir. 1991) ......................... 10

*United States v. Jacobs*, 117 F.3d 82 (2d Cir. 1997) ............................................................ 12, 13

*United States v. Philip Morris Inc.*, 212 F.R.D. 421 (D.D.C. 2002) ........................................... 11

*United States v. Zolin*, 491 U.S. 554 (1989) .......................................................................... 10, 14

*Upjohn Co. v. United States*, 449 U.S. 383 (1981) ..................................................................... 10

### Statutes

28 U.S.C. § 1651 ........................................................................................................................ 15

### Other Authorities

██████████████████████████████████████████

███████████████████████████████ ........................................... 2, 8

Camila Russo, *Argentina Plans New York-Buenos Aires Bond Swap*, Bloomberg (Aug. 27, 2013) ........................................................................................................................................ 6

## TABLE OF AUTHORITIES
(continued)

Page(s)

██████████████████████████████████████████████████████
██████████████████████████ .............................................. █

█████████████████████████████████████████████████████ .. 1,
8, 13

Ken Parks & Charles Roth, *Argentina Grapples with Credit-Rating Challenges*, Wall St. J. (Oct.
31, 2012) ...................................................................................................... 5

MercoPress, *Argentina to Blast "Vulture Funds" at the G20 Ministerial Meeting in Mexico*
(Nov. 4, 2012) ............................................................................................... 5

██████████████████████████████████████████████████
██████████████ .............................................................. 8

### Rules

Fed. R. Civ. P. 65(d)(2)(C) ................................................................................ 3

N.Y. R. of Prof. Conduct 3.3(b)......................................................................... 2, 9

## INTRODUCTION

Prompted by statements from Argentina's president that her country would evade the Injunction issued by this Court, this Court asked Argentina's attorney during a November 2013 hearing whether the Republic was, in fact, planning to evade the Injunction by changing the manner in which it made payments on its Exchange Bonds.  Counsel flatly denied the charge, declaring that "there is no plan of any kind."  Based on this clear statement, this Court denied Plaintiffs' request for sanctions in connection with Argentina's failure to produce documents to substantiate the plan Argentina's president announced.  Argentina has made similar representations to the United States Supreme Court, declaring in a brief filed on May 27, 2014, that any argument that Argentina would disobey the Injunction is false and that "Argentina will comply with the orders under review."

It appears, however, that Argentina's assertions that "there are no plans" and that it "will comply with the orders" were false.  According to an article published on a website of the ████████████ a recent memorandum from the Republic's lawyers to Argentina, which has now been widely published in the Argentine and international media (hereinafter, the "Memorandum") states that, if the Supreme Court denies review, ████████████
████████████████████████████████████████
████████████████████████████████████████
████████████████████████████████████████
████████████████████████████████████████
████████████████████████████[1]  The Memorandum, if authentic, shows that Argentina is preparing to change its payment methods beyond the reach of U.S. courts in

---

[1]   *See* Decl. of Robert A. Cohen (May 30, 2014), Ex. F.

1

violation of the Injunctions.  According to the Argentine daily ███████ that Memorandum was signed by the same lawyers who so recently told the Court "there are no plans." ████████



That Argentina is telling this Court through counsel that "there are no plans" and the Supreme Court that "Argentina will comply" with this Court's orders, while they are, at the same time—and in plain violation of this Court's October 3, 2013 Anti-Evasion Order—being advised by the same lawyers to ████████████████████████ ████████ compels Plaintiffs to bring this matter to the Court's attention.  N.Y. R. of Prof. Conduct 3.3(b).  Though the Memorandum is widely available on the Internet, because it is stamped as "Privileged," Plaintiffs, in an abundance of caution, seek this Court's confirmation that the document is not privileged before filing it with the Court.

Indeed, there is no plausible claim that this widely publicized document is privileged.  Widespread news reports confirm that the Memorandum has been widely disseminated beyond the attorney-client relationship—indeed, the Memorandum is available in full online.  If the Memorandum were ever privileged, none of the public policies underlying the attorney-client privilege would be served by protecting this document now.  Moreover, even if the Memorandum were not already public, it is not and never was protected by the privilege because it forms an integral part of ongoing fraud on U.S. courts perpetrated by Argentina and its counsel.  Argentina and its attorneys have repeatedly told this Court and other courts that Argentina has no plans to evade the Injunction.  As described in the press accounts, the

---

[2]  *See* Decl. of Robert A. Cohen (May 30, 2014), Ex. D.

2

Memorandum disregards the letter and spirit of this Court's prohibition on evading the Injunction and outlines a plan for circumventing the Court's jurisdiction in the event of a loss before the Supreme Court.  Predictably, the centerpiece of that plan is ████████████ ████████████████████████████

The news accounts reporting on the Memorandum make abundantly clear that Argentina and its attorneys are flouting this Court's Anti-Evasion Order and that supplemental relief is warranted.  The Anti-Evasion Order prohibits the formulation or design of any scheme to change the payment mechanisms of the Exchange Bonds.  Yet, according to news accounts, the Memorandum delineates just such a scheme—████████████████████████ ██████████████████████  The proposal of such a scheme violates the Anti-Evasion Order and it warrants an order that requires the Republic immediately to disclose any documents that relate to this or similar proposals to change the payment mechanisms on the Exchange Bonds or otherwise to evade this Court's Amended February 23 Orders.  Finally, Argentina's and its allies' attempts to parse this Court's orders into insignificance must be brought to an end.  This Court should issue a supplemental anti-evasion injunction that makes clear beyond all avoidance, sophistry, and artful semantics that its scheming to evade this Court's orders is prohibited.

Plaintiffs and the federal judiciary have invested nearly four years in this litigation.  If Argentina is allowed to execute its plan to evade the Injunction, that effort will be for naught and the rule of law would be undermined.  This Court has the power to stop the Republic, and it should do so.

## BACKGROUND

On February 23, 2012, this Court issued the Injunction ordering the Republic to specifically perform its obligations under the Equal Treatment Provision and forbidding

Argentina from making any payments on the Exchange Bonds without making a "ratable payment" on Plaintiffs' bonds. Feb. 23 Order ¶ 2. This prohibition also extends to any party that might act in active concert or participation with Argentina in any violation of the February 23 Order—including all parties that assisted Argentina to make payments on the Exchange Bonds. *Id.* ¶ 2(e); *see also* Fed. R. Civ. P. 65(d)(2)(C). Aware of Argentina's history of disobeying judicial decrees, the Court also prohibited Argentina from "taking action to evade the directives of [the Injunction], render it ineffective, or take any steps to diminish the Court's ability to supervise compliance with [it], including, but not limited to, altering or amending the processes or specific transfer mechanisms by which it makes payments on the Exchange Bonds." Feb. 23 Order ¶ 4. This anti-evasion provision prohibits Argentina from, *inter alia*, substituting the entities that now process Argentina's Exchange Bond payments—which are subject to this Court's jurisdiction—with other entities in Argentina or elsewhere.

On March 5, 2012, this Court stayed the Injunction pending appeal, but the Court made clear that Argentina still was prohibited from "tak[ing] any action to evade" the Injunction, including by "altering or amending the processes or specific transfer mechanisms by which [Argentina] makes payments on the Exchange Bonds." March 5 Order ¶ 2.

While the case was on appeal in the Second Circuit, a newspaper article suggested that Argentina was plotting to evade the Injunction. Plaintiffs sought discovery to learn whether those reports were accurate. In response, Argentina's counsel told this Court that Argentina "has complied with" and still "is acting in compliance with the March 5 Stay Order." Letter from Carmine D. Boccuzzi Jr. to the Honorable Thomas P. Griesa, at 2 (July 26, 2012).

In October 2012, the Second Circuit affirmed this Court's interpretation of the Equal Treatment Provision and this Court's finding that injunctive relief was warranted. *See NML*

4

*Capital, Ltd. v. Republic of Argentina*, 699 F.3d 246 (2d Cir. 2012). The Second Circuit remanded the case to this Court to address two remaining issues.

Immediately after the Second Circuit issued its October 2012 decision, Argentina's highest officials announced that Argentina would never obey the Injunction. President Kirchner vowed that Argentina was "going to pay [the Exchange Bondholders] with dollars because we have them," "but not one dollar to the 'vulture funds.'" MercoPress, *Argentina to Blast "Vulture Funds" at the G20 Ministerial Meeting in Mexico* (Nov. 4, 2012). Argentina's Finance Minister likewise declared that "Argentina isn't going to change its position of not paying vulture funds . . . despite any ruling." Ken Parks & Charles Roth, *Argentina Grapples with Credit-Rating Challenges*, Wall St. J. (Oct. 31, 2012).

Plaintiffs promptly brought Argentina's pronouncements of its intentions to defy this Court's rulings to this Court's attention. In response, Argentina, through its counsel, again pledged that "the Republic has complied and is complying with the Stay, which remains in effect." Letter from Carmine D. Boccuzzi Jr. to the Honorable Thomas P. Griesa, at 3 (Nov. 8, 2012). And in a November 2012 hearing, Argentina told the Court that these statements were merely attempts "to reassure the markets," and that "[t]he payment mechanism stays in place." Hr'g Tr. 12:19, 13:12 (Nov. 9, 2012). Unsatisfied with these assurances, the Court ordered Argentina to produce an affidavit confirming that the Republic was complying with the March 5 Order. *Id.* at 23:8-15. Argentina provided an affidavit from an Economy Ministry official, Francisco Guillermo Eggers, attesting that Argentina "has complied, is complying, and will comply with the terms of the March 5 Stay Order." Eggers Decl. ¶ 4 (Nov. 16, 2012).

The Court concluded remand proceedings on November 21, 2012, amending the Injunction while again prohibiting Argentina from "taking action to evade" it. Am. Feb. 23

Order ¶ 4.  That same day, the Court concluded that the statements by Argentina's President and its Finance Minister violated the March 5 Order.  Op. 3 (Nov. 21, 2012).  In light of this "extraordinary circumstance of the most serious nature," the Court lifted the stay of the Injunction.  *Id.* at 4-5.

Argentina then asked the Second Circuit to reinstate the stay of the Injunction.  In its briefing to that court, Argentina's counsel again sought to excuse its client's threats of defiance: According to Argentina's counsel, those statements merely "publicly manifested shock and indignation."  Emergency Mot. by Def.-Appellant the Republic of Argentina for a Stay Pending Appeal 5-6, No. 12-105 (2d Cir. Nov. 27, 2012).  In arguing that the stay "should be reinstated immediately," Argentina's counsel again promised that "that the Republic has complied, is complying and will comply with the Stay." *Id.* at 18.  In light of these representations, the Second Circuit granted Argentina's motion to stay the Injunction.  It subsequently affirmed the Injunction as amended, but it stayed enforcement of the Injunction pending a timely petition for a writ of certiorari.  *See NML Capital, Ltd. v. Republic of Argentina*, 727 F.3d 230 (2d Cir. 2013).

The next business day after the Second Circuit's decision, President Kirchner announced a new plan to move the place of payment under the Exchange Bonds from New York to Argentina, "aimed at circumventing the U.S. court ruling" because those Argentine institutions might not be subject to the jurisdiction of the U.S. courts.  Camila Russo, *Argentina Plans New York-Buenos Aires Bond Swap*, Bloomberg (Aug. 27, 2013).

Recognizing that Argentina's scheme would violate the anti-evasion restrictions in previous orders, this Court issued an order on October 3, 2013, describing in more detail what its prior orders prohibited.  The March 5 Order, the Court explained, prohibits "(i) the implementation of the plan to allow Exchange Bonds to be exchanged for securities or similar

6

instruments payable in Argentina, which was announced by President Fernandez de Kirchner in her speech of August 26, 2013, (ii) implementation of any functionally equivalent or reasonably similar plan, or (iii) any step towards implementing (including without limitation the formulation or design of) such a plan or a functionally equivalent or reasonably similar plan." Oct. 3 Order ¶ 3. To ensure compliance with these obligations, the October 3 Order also required Argentina to disclose any communications between Argentina and third parties "with respect to any plan or proposal [to] violat[e]" the March 5 Order or the anti-evasion provision in the October 3 Order. *Id.* ¶ 4. Argentina produced no documents in response, asserting that Argentina "has no plan to violate the Anti-Evasion Injunction." Letter from Carmine D. Boccuzzi Jr. to the Honorable Thomas P. Griesa, at 2 (Nov. 6, 2013).

This Court held a hearing regarding Argentina's response on November 15. Once again, Argentina represented to the Court that "[t]here is no plan of any kind—and it's set forth in an affidavit—to do anything with respect to the exchange bonds . . . . No such plan. No evidence of such a plan." Hr'g Tr. 15:3-5 (Nov. 15, 2013). The Court ultimately denied Plaintiffs' request for sanctions, reasoning that any evasion scheme would likely become public, and that, since nothing more had yet become public, "the Republic is holding things in place." *Id.* 17:7. As to the discovery, the Court ordered no further relief, accepting Argentina's representation that it was not "playing some game about the discovery request." *Id.* 20:3-6.

Most recently, Argentina assured the Supreme Court on May 27, 2014, that it planned to obey this Court's orders. In a brief in support of its certiorari petition challenging the Injunction itself, Argentina's counsel told the Supreme Court: "Respondents argue that this Court should deny certiorari because Argentina will not comply with an adverse ruling. That claim is wrong . . . . To be clear, absent relief Argentina will comply with the orders under review."

Reply Br. of Pet. 12-13, *Republic of Argentina v. NML Capital Ltd.*, No. 13-990 (May 27, 2014)

(citation omitted); *see also id.* at 2 ("Argentina's recourse to judicial review does not represent

unwillingness to comply with its legal obligations . . . . Contrary to Respondents' assertions,

absent relief Argentina will comply with the injunctions . . . .").

 Argentina's assurances were false.  Widespread press accounts detail a Spanish-language

memorandum from Argentina's counsel in this matter, which was published on the website

███████ reflecting that Argentina is actively pursuing strategies to evade this Court's

judgment if it fails to secure review by the Supreme Court. █████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████ On

May 29, 2014, the Argentine news outlet ██████ reported that the Memorandum was "leaked to

████████ the outlet described the Memorandum as stating: ████████████████████

███████████████████████████████████████████████████████

██████████████████████████████████████ A report by the

Argentine website ████████ published a similar description of the Memorandum.

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

████████████████████████[3] And, on May 29, 2014, a blog affiliated with

the ████████ posted a link to the Memorandum posted on the ██████ website and quoted

language from the Memorandum (as translated by a commenter) in which the Republic was

advised:

---

[3] *See* Decl. of Robert A. Cohen (May 30, 2014), Ex. E.

[REDACTED]

[REDACTED] In other words, if the Supreme Court denies Argentina's petition—which it could do as early as June 16, 2014—these news reports make clear that Argentina has been advised that [REDACTED]

[REDACTED]

[REDACTED]

## ARGUMENT

### I.   The Memorandum Is Not Privileged.

Although the Memorandum has been extensively published in the public domain, Plaintiffs seek leave to file it, out of an abundance of caution, so that the Court can be fully advised of apparent, ongoing efforts to circumvent its jurisdiction.[4]  If Argentina asserts the attorney-client privilege with respect to the Memorandum, this Court should reject that argument out of hand.  The Memorandum is not privileged for two independent reasons.  First, the Memorandum is widely available to the public on the internet, eliminating any privileged status it may once have had.  Second, the Memorandum is part of an ongoing fraud on this Court and thus falls within the crime-fraud exception to the attorney-client privilege.

---

[4]   As further discussed below, public accounts of the Memorandum reflect that its contents are inconsistent with representations that have been made to this Court, the Second Circuit, and the Supreme Court.  Consequently, Plaintiffs are potentially obliged to raise it to the attention of the Court.  *See* N.Y. R. of Prof. Conduct 3.3(b) ("A lawyer who represents a client before a tribunal and who knows that a person intends to engage, is engaging or has engaged in criminal or fraudulent conduct related to the proceeding shall take reasonable remedial measures, including, if necessary, disclosure to the tribunal.").

**A.      Publication Of The Memorandum Vitiates Any Privilege That Might Have Attached To The Memorandum.**

If Argentina invokes the attorney-client privilege, it will bear the "'burden to show that its privilege was not waived through disclosure.'" *Bus. Integration Servs., Inc. v. AT & T Corp.*, 251 F.R.D. 121, 124 (S.D.N.Y. 2008) (citation omitted).  It cannot carry that burden.  Any protection the Memorandum might have enjoyed vanished when Argentina allowed anyone with an internet connection to view it.  And even if the disclosure were inadvertent, there is nothing to suggest that Argentina took adequate steps to protect this document from being made public, or that it attempted to protect the confidentiality of this document after it initially was disclosed.

Moreover, whatever the circumstances by which the Memorandum was published for the world to see, the policy justifications that underlie the privilege do not support according protection to a document that is already publicly available.  Because "the [attorney-client] privilege has the effect of withholding relevant information from the factfinder, it applies only where necessary to achieve its purposes." *Fisher v. United States*, 425 U.S. 391, 403 (1976). Accordingly, the privilege must "be strictly confined within the narrowest possible limits underlying its purpose," and "cannot stand in the face of countervailing . . . strong public policy." *United States v. Goldberger & Dubin, P.C.*, 935 F.2d 501, 504 (2d Cir. 1991) (collecting cases).[5] Likewise, the privilege plainly "does not extend to communications 'made for the purpose of getting advice for the commission of a fraud' or crime." *United States v. Zolin*, 491 U.S. 554, 563 (1989) (citation omitted).

---

[5]   This is true whether federal or New York law applies.  *See, e.g., Madden v. Creative Servs., Inc.*, 646 N.E.2d 780, 783 (N.Y. 1995) ("[I]n that the attorney-client privilege is—like all privileges—a limitation on the truth-seeking process, the statute is strictly construed."); *Priest v. Hennessy*, 409 N.E.2d 983, 986 (N.Y. 1980) ("[E]ven where the technical requirements of the [attorney-client] privilege are satisfied, it may, nonetheless, yield in a proper case, where strong public policy requires disclosure.").

There would be no point in applying that privilege here.  The whole purpose behind the attorney-client privilege is "to encourage full and frank communication between attorneys and their clients" by "'free[ing] [the client] from the consequences or the apprehension of disclosure.'"  *Upjohn Co. v. United States*, 449 U.S. 383, 389 (1981).  That purpose cannot be furthered by deeming privileged a document whose "confidentiality . . . ha[s] been eviscerated by [its] widespread disclosure."  *Falise v. Am. Tobacco Co.*, 193 F.R.D. 73, 82 (E.D.N.Y. 2000); *see id.* at 82 (holding that public policy considerations overcame asserted privilege where "[t]he documents in issue . . . [were] already publicly available via the internet, and have been the subject of press releases and news stories"); *see also, e.g.*, *United States v. Philip Morris Inc.*, 212 F.R.D. 421, 428 (D.D.C. 2002) (same).

Given that anyone with internet access can already obtain the Memorandum, it would make no sense for this Court to close its eyes to it on the basis of the attorney-client privilege.  Doing so certainly would not facilitate open discussion between Argentina and its counsel; "to the extent that disclosure might inhibit candid attorney-client communications, that inhibition has already occurred."  *Falise*, 193 F.R.D. at 82; *see also In re von Bulow*, 828 F.2d 94, 103 (2d Cir. 1987) ("Matters actually disclosed in public lose their privileged status because they obviously are no longer confidential.  The cat is let out of the bag. . . .").

Moreover, "while the policy bases for preserving confidentiality have been rendered virtually nonexistent . . . , the policy considerations supporting disclosure are substantial."  *Falise*, 193 F.R.D. at 84.  By now, the public is well aware that Argentina is planning to evade this Court's injunction despite its repeated promises not to do so.  And given "the public attention that will doubtlessly be given to these cases, as well as the availability of th[e] document[] to the general public, a [proceeding in] which th[is] plainly critical document[] [is]

unavailable to the finder of fact could seriously undermine the public's confidence in the integrity of the court's process." *Falise*, 193 F.R.D. at 84; *see also Philip Morris*, 212 F.R.D. at 429 ("It would be anomalous if the general public were permitted unfettered access to the . . . document[], yet [it] could not be used in this lawsuit."). Whether or not Argentina purposefully disclosed the Memorandum, it cannot unring the bell now. The Memorandum is not privileged.

**B.     The Memorandum Is Not Privileged Because It Perpetuates A Fraud On This Court.**

Even if publication had not destroyed the Memorandum's potentially privileged status, Argentina still could not shield it from this Court's review. Under the "crime-fraud" exception to the attorney-client privilege, a party cannot invoke that privilege where there is "probable cause to believe that a fraud . . . has been committed and that the communications in question were in furtherance of the fraud." *United States v. Jacobs*, 117 F.3d 82, 87 (2d Cir. 1997). Such misconduct includes "'[p]erpetuation of a fraud on the court,'" such as "'provid[ing] false information'" to a tribunal for a client's gain. *Chevron Corp. v. Donziger*, No. 11 CIV. 0691 LAK JCF, 2013 WL 4045326, at *1 (S.D.N.Y. Aug. 9, 2013) (citation omitted); *cf., e.g.*, *Intellect Wireless, Inc. v. HTC Corp.*, No. 09 C 2945, 2014 WL 1797488, at *2 (N.D. Ill. May 6, 2014) ("The communications clearly reveal [the patent-holder]'s awareness of false content in a filed declaration and instruct [the patent prosecuting attorney] to confer with [the patent-holder's company's attorneys] about the matter. This exchange alone . . . deprives [the patent-holder's company] of any attorney-client privilege." (footnote omitted)).[6]

---

[6]   Once again, New York law does not dictate a different result. *See, e.g.*, *Surgical Design Corp. v. Correa*, 727 N.Y.S.2d 462, 463 (N.Y. App. Div. 2001) (holding that "letter from the plaintiff's Brazilian counsel to the plaintiff . . . advising the plaintiff that its export practices were fraudulent under Brazilian law" was "not protected by that privilege because it relates to client communication in furtherance of a fraudulent scheme"); *see also Sarkar v. Pathak*, 889 N.Y.S.2d 184, 186 (N.Y. App. Div. 2009) ("[S]ince an intentionally false statement in a
*(Cont'd on next page)*

In light of the Memorandum's revelations, there can be little question that Argentina is committing a fraud on this Court and that this document is advising Argentina on how best to do so. On November 15, 2013, Argentina's counsel in this matter assured this Court that "[t]here is no plan of any kind . . . to do anything with respect to the exchange bonds . . . . No such plan." Hr'g Tr. 15:3-7 (Nov. 15, 2013). But fewer than six months after assuring this Court that the scheme announced by Argentina's president in August 2013 did not exist, Argentina's counsel recommended for the Republic a plan for executing just such a scheme. According to news reports, its counsel advised Argentina on May 2, 2014 that if certiorari is denied Argentina should ███████████████████████████████████████████████████████████████ ███████████████████████████████████████████████████████████████ ███████████████████████████████████████████ Yet less than a month after its counsel advised Argentina that it should evade the Injunction, Argentina told the Supreme Court—in a brief signed by the same attorneys—that "[t]o be clear, absent relief Argentina will comply with the orders under review." Reply Br. of Pet. 13, *Republic of Argentina v. NML Capital Ltd.*, No. 13-990 (May 27, 2014); *see also id.* at 2 ("Argentina's recourse to judicial review does not represent unwillingness to comply with its legal obligations . . . . Contrary to Respondents' assertions, absent relief Argentina will comply with the injunctions . . . .").

That sequence of events furnishes more than enough evidence to establish "probable cause that a fraud . . . has been committed and that the communications in question were in furtherance of the fraud." *Jacobs*, 117 F.3d at 87. Indeed, according the Memorandum privileged status would undermine the entire purpose of the crime-fraud exception: "to assure

---

*(Cont'd from previous page)*

sworn document filed with the court constitutes the crime of perjury, the crime-fraud exception to the attorney-client privilege applies.").

that the 'seal of secrecy' between lawyer and client does not extend to communications 'made for the purpose of getting advice for the commission of a fraud' or crime." *Zolin*, 491 U.S. at 563 (citations omitted). Thus, even if online disclosure of the Memorandum did not vitiate its privileged status, its contents—*i.e.*, advice on how to perpetuate a fraud on this Court—would have the same effect.

## II.   Supplemental Relief Is Warranted.

### A.   Argentina Has Violated This Court's October 3 Order.

This Court should find that the ███████████████████████████████████ ██████████████ reflected in the reporting on the Memorandum, is a plain violation of this Court's previous orders. The October 3 Order declares that "any step" towards implementing an evasion plan "reasonably similar" to the plan announced by President Kirchner in her speech on August 26, 2013, would violate the anti-evasion provisions of the October 3 and March 5 Orders— specifically "*including without limitation the formulation or design of . . . such a plan.*" Oct. 3 Order ¶ 3 (emphasis added). And if the Injunction of the Amended February 23 Orders were not stayed, such scheming would surely violate the anti-evasion provision of that Order as well. *See* Am. Feb. 23 Order ¶ 4.

███████████████████████████████████████████████████████

███████████████████████████████████████████████

████████████████████████████████ President Kirchner's plan to "allow[ ] holders of Exchange Bonds to replace these instruments with nearly identical instruments that are payable within the Republic," Oct. 3 Order at 5. ██████████████████████████████████████ █████████████████████████████████████ President Kirchner's restructure-abroad plan that this Court flatly prohibited.

Argentina's actions do not lie in a gray area:  It has defied this Court's anti-evasion orders.  The Court should make crystal clear that such conduct violates this Court's orders and will not be tolerated.

**B.      This Court Should Order Disclosure Of Any Scheme To Remove Payment Mechanisms From This Court's Jurisdiction.**

Certainly if the Court finds the Republic has violated the Anti-Evasion Order, but even if it does not, the Court should order the Republic immediately to disclose all communications or other documents relevant to its evasion plan.

District courts have "ample authority to issue all orders necessary" to enforce their injunctions, including by issuing discovery against the enjoined party.  *New York v. Shore Realty Corp.*, 763 F.2d 49, 53 (2d Cir. 1985) (citing 28 U.S.C. § 1651); *see also United States v. City of New York*, 717 F.3d 72, 97, 99 (2d Cir. 2013) (affirming injunction that "require[d] discovery through document production and deposition availability to ensure compliance with the injunction").  Indeed, this Court has previously exercised that authority in the February 23 Order, the Amended February 23 Order, and the October 3 Order.

This Court should once again order Argentina to disclose all documents relevant to its evasion plans.  Press reports on the Memorandum make clear that ███████████████████ ████████████████████████████████████████████████████████████ ████████████████████████████—even though it would clearly violate this Court's prohibition on "taking action to evade the directives of this ORDER, render it ineffective, or to take any steps to diminish the Court's ability to supervise compliance with the ORDER."  Am. Feb. 23 Order ¶ 4.  To prepare for and prevent such a violation, Plaintiffs need to know what Argentina plans.

Argentina has successfully rebuffed prior discovery efforts by promising this Court that there is "no plan of any kind" to evade the Injunction. Hr'g Tr. 15:3 (Nov. 15, 2013). In light of recent reports on the Memorandum, any such claims are plainly false.

**C.      A Supplemental Injunction Should Be Issued to Clarify This Court's Prohibition Of Evasion Tactics.**

In its October 3 Order, this Court made clear that the Republic and its agents were prohibited from formulating or designing any plans to change the payment mechanisms of the Exchange Bonds, and, as urged *supra*, Argentina's solicitation of plans to move those payment mechanisms outside the reach of U.S. courts is a plain violation of that order. As the time for action on Argentina's certiorari petition grows near, Argentina and its agents may be tempted to once again test the boundaries of "planning." Plaintiffs thus respectfully request that the Court issue a supplemental injunction that leaves no room for the spurious interpretative gymnastics of the Republic and those that would aid it in evading this Court's orders. For the avoidance of any doubt of their obligations going forward, no matter what the Court rules with respect to the violation, this Court should clarify that Argentina is permanently prohibited from taking *any* action—from the formulation of a plan to the execution thereof—to change the manner in which it pays the Exchange Bonds.

Courts have ample authority to clarify "orders previously issued" to "add certainty to an implicated party's efforts to comply with the order and provide fair warning as to what future conduct may be found contemptuous." *N.A. Sales Co., Inc. v. Chapman Indus. Corp.*, 736 F.2d 854, 858 (2d Cir. 1984). "[F]ederal courts that issue injunctions can and should give declaratory guidance defining the meaning and scope of the injunctions issued." *Bank of Crete, S.A. v. Koskotas*, 733 F. Supp. 648, 649 (S.D.N.Y. 1990). Indeed, this Court anticipated the possibility

that it would have to issue guidance to clarify the anti-evasion restrictions of its March 5 Order, *see* March 5 Order ¶ 4, and has in fact previously done so, *see* Oct. 3 Order.

Plaintiffs' proposed supplemental order will ensure that Argentina and others are on notice that Argentina may not so much as formulate a plan to evade the Injunction. The supplemental order would simply clarify that the prohibition on any action "to evade the directives of the February 23, 2012 Orders . . . , render them ineffective . . . , or to diminish the Court's ability to supervise compliance with the February 23, 2012 Orders," March 5 Order ¶ 2; *see also* Am. Feb. 23 Order ¶ 4 (same), also prohibits the formulation of a plan of evasion like that described by news outlets reporting on the Memorandum.

## CONCLUSION

The facts are beyond dispute: Argentina is plotting right now to evade the Injunction the moment that it takes effect. This Court should enter the Supplemental Injunction to tell Argentina once and for all that such action would violate the anti-evasion provision in the now-stayed Injunction, and already violates the anti-evasion provisions in the March 5 and October 3 Orders.

May 30, 2014

Theodore B. Olson
(tolson@gibsondunn.com)
Matthew D. McGill
(mmcgill@gibsondunn.com)
Jason J. Mendro
(jmendro@gibsondunn.com)
GIBSON, DUNN & CRUTCHER LLP
1050 Connecticut Avenue, N.W.
Washington, D.C. 20036-5306
(202) 955-8500

Respectfully submitted,

By: _____
Robert A. Cohen
(robert.cohen@dechert.com)
DECHERT LLP
1095 Avenue of the Americas
New York, NY 10036-6796
(212) 698-3500

*Attorneys for Plaintiff NML Capital, Ltd.*

Robert D. Carroll
(rcarroll@goodwinprocter.com)
GOODWIN PROCTER LLP
53 State Street
Boston, MA 02109
(617) 570-1000

*Attorneys for Plaintiff Olifant Fund, Ltd.*

Daniel B. Rapport
(drapport@fklaw.com)
Edward A. Friedman
(efriedman@fklaw.com)
FRIEDMAN KAPLAN SEILER
& ADELMAN LLP
7 Times Square
New York, N.Y. 10036
(212) 833-1100

*Attorneys for Plaintiffs Aurelius Capital Master, Ltd., Aurelius Opportunity Fund II, LLC, ACP
Master, Ltd., Blue Angel Capital I LLC*

Michael C. Spencer
MILBERG LLP
(MSpencer@milberg.com)
One Pennsylvania Plaza
New York, N.Y. 10119
(212) 594-5300

*Attorney for Plaintiffs Pablo Alberto Varela, et al.*