**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - | x : | |
| NML CAPITAL, LTD., | : | 08-cv-6978 (TPG) |
| | | 09-cv-1707 (TPG) |
| Plaintiff, | | 09-cv-1708 (TPG) |
| | : | |
| -against- | : | |
| THE REPUBLIC OF ARGENTINA, | : | |
| Defendant. | : | |
| - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - | : x | |
| | : | |
| AURELIUS CAPITAL MASTER, LTD. and ACP MASTER, LTD., | : | 09-cv-8757 (TPG) 09-cv-10620 (TPG) |
| Plaintiffs, | : | |
| -against- | : | |
| THE REPUBLIC OF ARGENTINA, | : | |
| Defendant. | : | |
| - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - | x | *(captions continue on following pages)* |

**MEMORANDUM OF LAW IN SUPPORT OF THE MOTION OF
NON-PARTY BANK OF NEW YORK MELLON, AS INDENTURE TRUSTEE,
<u>FOR CLARIFICATION OF AMENDED FEBRUARY 23, 2012 ORDERS</u>**

| | : | |
|---|---|---|
| AURELIUS OPPORTUNITIES FUND II, LLC and AURELIUS CAPITAL MASTER, LTD., | : | 10-cv-1602 (TPG)<br>10-cv-3507 (TPG) |
| | : | |
| Plaintiffs, | | |
| | : | |
| -against- | | |
| | : | |
| THE REPUBLIC OF ARGENTINA, | | |
| | : | |
| Defendant. | | |
| | : | |
| - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - | x | |

| | : | |
|---|---|---|
| AURELIUS CAPITAL MASTER, LTD. and AURELIUS OPPORTUNITIES FUND II, LLC, | : | 10-cv-3970 (TPG)<br>10-cv-8339 (TPG) |
| | : | |
| Plaintiffs, | | |
| | : | |
| -against- | | |
| | : | |
| THE REPUBLIC OF ARGENTINA, | | |
| | : | |
| Defendant. | | |
| | : | |
| - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - | x | |

| | : | |
|---|---|---|
| BLUE ANGEL CAPITAL I LLC, | | 10-cv-4101 (TPG) |
| | : | 10-cv-4782 (TPG) |
| Plaintiff, | | |
| | : | |
| -against- | | |
| | : | |
| THE REPUBLIC OF ARGENTINA, | | |
| | : | |
| Defendant. | | |
| | : | |
| - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - | x | *(captions continue on following page)* |

|  | : |  |
| --- | --- | --- |
| PABLO ALBERTO VARELA, et al., | : | 10-cv-5338 (TPG) |
| Plaintiffs, | : |  |
| -against- | : |  |
| THE REPUBLIC OF ARGENTINA, | : |  |
| Defendant. | : |  |
| - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - | : x |  |

|  | : |  |
| --- | --- | --- |
| OLIFANT FUND, LTD., | : | 10-cv-9587 (TPG) |
| Plaintiff, | : |  |
| -against- | : |  |
| THE REPUBLIC OF ARGENTINA, | : |  |
| Defendant. | : |  |
| - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - | : x |  |

**REED SMITH LLP**
Eric A. Schaffer
C. Neil Gray
Evan K. Farber
599 Lexington Avenue
New York, NY 10022
(212) 521-5400

*Attorneys for Non-Party The Bank of New York Mellon, as Indenture Trustee*

**Table of Contents**

PRELIMINARY STATEMENT ................................................................................................ 1

BACKGROUND FOR THIS REQUEST FOR CLARIFICATION ............................................ 2

    I.    The Trustee Receives Payment Of The Funds From Argentina Under The Indenture ...................................................................................... 2

    II.    BNY Mellon Complies With The Injunctions And Maintains The Funds At Banco Central ................................................................................ 4

    III.    The Exchange Holders And The Republic Threaten Litigation Against The Trustee In Foreign Jurisdictions For Adhering To This Court's Orders .................................................................................................. 5

ARGUMENT .................................................................................................................................. 6

    I.    The Trustee Seeks Clarification Of The Injunctions .............................................. 6

    II.    The Court Should Clarify That The Trustee Should Maintain The Status Quo By Holding The Funds In Its Banco Central Accounts ........................ 7

        A.    An Order Requiring Return Of The Funds Would Increase The Trustee's Potential Liability Exposure And Violate Due Process ................................................................................ 7

        B.    Maintaining The Funds In BNY Mellon's Banco Central Accounts Significantly Reduces The Risks For The Trustee And Preserves The Status Quo ................................................ 12

CONCLUSION ............................................................................................................................ 14

## Table of Authorities

**Cases**

*AG Capital Funding Partners, L.P. v. State Street Bank & Trust Co.*,
  11 N.Y.3d 146 (2008) ............................................................................................. 2

*Blumenthal v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*,
  910 F.2d 1049 (2d Cir. 1990) .................................................................................. 9

*Chase National Bank v. City of Norwalk*,
  291 U.S. 431 (1934) ................................................................................................ 9

*Cook Inc. v. Boston Sci. Corp.*,
  333 F.3d 737 (7th Cir. 2003) .................................................................................. 8

*Edgar v. MITE Corp.*,
  457 U.S. 624 (1982) ................................................................................................ 9

*EEOC v. Local 638*,
  81 F.3d 1162 (2d Cir. 1996) .................................................................................. 10

*Elliott Assocs. v. J. Henry Schroder Bank & Trust Co.*,
  838 F.2d 66, (2d Cir. 1988) .................................................................................... 2

*General Building Contractors Association, Inc. v. Pennsylvania*,
  458 U.S. 375 (1982) .............................................................................................. 10

*Grain Traders, Inc. v. Citibank, N.A.*,
  160 F.3d 97 (2d Cir. 1998) ..................................................................................... 8

*Heyman v. Kline*,
  444 F.2d 65 (2d Cir. 1971) ................................................................................... 10

*Louisville Joint Stock Land Bank v. Radford*,
  295 U.S. 555 (1935) .............................................................................................. 11

*Meckel v. Cont'l Res. Co.*,
  758 F.2d 811 (2d Cir. 1985) ................................................................................... 2

*Nemer Jeep-Eagle, Inc. v. Jeep-Eagle Sales Corp.*,
  992 F.2d 430 (2d Cir. 1993) ................................................................................... 8

*NML Capital Ltd. v. Republic of Argentina*,
  727 F.3d 230 (2d Cir. 2013) ................................................................................... 7

*Nokia Corp. v. InterDigital, Inc.*,
  645 F.3d 553 (2d Cir. 2011) ................................................................................... 9

*Regal Knitwear Co. v. NLRB*,
    324 U.S. 9 (1945) .................................................................................................. 10

*Richards v. Jefferson County*,
    517 U.S. 793 (1996) ................................................................................................ 9

*Scott v. Donald*,
    165 U.S. 107 (1897) ................................................................................................ 9

*Taylor v. Sturgell*,
    553 U.S. 880 (2008) ................................................................................................ 9

*United States v. Zang*,
    703 F.2d 1186 (10th Cir. 1982) .............................................................................. 8

*Vacco v. Operation Rescue Nat'l*,
    80 F.3d 64 (2d Cir. 1996) ..................................................................................... 10

*Wright v. Union Cent. Life Ins. Co.*,
    311 U.S. 273 (1940) .............................................................................................. 11

*Zenith Radio Corp. v. Hazeltine Research, Inc.*,
    395 U.S. 100 (1969) ................................................................................................ 9

**Rules**

Fed. R. Civ. P. 65 ........................................................................................................ 10

Fed. R. Civ. P. 65(c) ................................................................................................... 10

Fed. R. Civ. P. 65(d)(2) ..................................................................................... 4, 9, 10

**Other Authorities**

Restatement (Second) of Contracts § 364(1)(b) ........................................................... 9

The Bank of New York Mellon ("BNY Mellon" or the "Trustee") respectfully submits this memorandum of law in support of its application seeking clarification of the Court's Amended February 23, 2012 Orders (the "Injunctions").[1]

## PRELIMINARY STATEMENT

BNY Mellon is a non-party to this litigation. Its role is limited to that of indenture trustee—as relevant here, receiving funds from the bond issuer (the Republic of Argentina) and distributing them to bond holders (the Exchange Holders), typically through United States and European clearing systems. At all turns, BNY Mellon has complied with this Court's orders. In fact, at the June 27 hearing, the Court noted that "[y]our bank didn't do anything wrong. Your bank simply received [Argentina's payment] and then properly held onto it. . . . That's very very good that you did." *See* Ex. E (June 27, 2014 Tr.), at 33:3-7.

Accordingly, when the Court suggested return of the approximately $539 million (the "Funds") that the Republic transferred into BNY Mellon's accounts at Banco Central de la Republica de Argentina, it also endorsed BNY Mellon's proposal to "work with [Plaintiffs] as best as we can to see if we can't craft something that truly leaves the Bank of New York Mellon not exposed to any liability where it has complied with your Honor's order." *Id.* at 36:11-15. Despite the Court's stated desire to maintain the status quo while Plaintiffs and Argentina could negotiate (*id.* at 20:11-15, 20:25-21:4), Plaintiffs have proposed an Order that goes beyond the confines of the Court's Injunctions (in fact, upsetting the status quo) and risks subjecting BNY Mellon to multi-jurisdictional litigation and conflicting orders. In fact, the Euro Bondholders already have threatened to sue BNY Mellon in England if it returns the funds to Argentina. In

---

[1] On July 1, 2014, the Trustee submitted a letter, subsequently docketed at Dkt. #552, briefly raising the concerns expressed herein and requesting the opportunity to file a formal application. On July 2, 2014, this Court advised the Trustee that it "would appreciate a formal motion for clarification from BNY" and granted the Trustee's request to file its motion by today's date.

- 1 -

addition, an order compelling a non-party like BNY Mellon to move funds that it holds in trust (for itself and the Exchange Holders) raises significant due process concerns and, in any event, is not possible without specific funds transfer instructions (including receiving bank and account details) that are not provided by Plaintiffs' proposed order.

By contrast, an order requiring BNY Mellon to maintain the Funds in the Banco Central Accounts would give full effect to this Court's Injunctions, provide greater protection for BNY Mellon, reduce the likelihood of conflicting orders from other—likely non-United States—courts, and afford every interested party a full opportunity to be heard. Such an order would not prejudice Plaintiffs or any other party and would effectively maintain the status quo.

Accordingly, by this motion, the Trustee seeks clarification that it may comply with this Court's Injunctions by retaining the funds received from Argentina in the Banco Central Accounts where they are presently held. In the alternative, the Trustee seeks clarification that the Funds will be returned to Argentina only if BNY Mellon, as indenture trustee, receives (1) specific wiring instructions from Argentina and (2) assurances from this Court that the Trustee cannot be held liable for returning the funds.

## BACKGROUND FOR THIS REQUEST FOR CLARIFICATION

### I.    The Trustee Receives Payment Of The Funds From Argentina Under The Indenture

The Plaintiffs' proposed order compromises the Trustee's rights under the Indenture.[2] In this case, BNY Mellon's rights and duties are defined by a Trust Indenture between the

---

[2]   Under New York law an indenture trustee, unlike a common law trustee, has no duties beyond those set out in the trust agreement. *See, e.g.*, *Elliott Assocs. v. J. Henry Schroder Bank & Trust Co.*, 838 F.2d 66, 71 (2d Cir. 1988) (It is "well established under state common law that the duties of an indenture trustee are strictly defined and limited to the terms of the indenture . . . .") (citations omitted); *Meckel v. Cont'l Res. Co., 758 F.2d 811, 815-16 (2d Cir. 1985)* ("Unlike the ordinary trustee, who has historic common law duties imposed beyond those in the trust agreement, an indenture trustee is more like a stakeholder whose duties and obligations are exclusively defined by the terms of the indenture agreement.") (citations omitted); *AG Capital Funding Partners, L.P. v.*

Republic, as Issuer, and The Bank of New York Mellon, as Trustee, dated as of June 2, 2005 (as supplemented by the First Supplemental Indenture between the Republic and the Trustee, dated as of April 30, 2010). *See* Ex. A (Indenture); Ex. B (November 16, 2012 Declaration of Kevin F. Binnie ("First Binnie Decl."), at ¶ 3).[3]  Pursuant to the Indenture, Argentina issued bonds denominated in dollars (the "Dollar-Denominated Bonds") and in euros (the "Euro-Denominated Bonds" and, collectively with the Dollar-Denominated Bonds, the "Exchange Bonds"). Ex. B (First Binnie Decl.), at ¶¶ 5-6. BNY Mellon serves as the trustee paying agent for these Exchange Bonds only. *Id.* at ¶ 7. It has no contractual relationship with Plaintiffs and it has no duties with regard to the bonds held by Plaintiffs.

The Exchange Bond payment process is detailed in the First and Second Binnie Declarations. *See* Ex. B (First Binnie Decl.) at ¶¶ 8-12, Ex. C (June 17, 2014 Declaration of Kevin F. Binnie) at ¶¶ 7-9. Generally speaking, Argentina deposits funds into an account in the name of the Trustee at Banco Central, the Trustee then transfers the funds to accounts in Europe (for the Euro-Denominated Bonds) or New York (for the Dollar-Denominated Bonds), and the funds are then transferred to Euroclear Bank S.A. N.V. ("Euroclear"), Clearstream Banking S.A. ("Clearstream"), or the Depository Trust Company ("DTC" and, together with Euroclear and Clearstream, the "Clearinghouses"), which act as registered owners of the Exchange Bonds. Finally, the Clearinghouses distribute the funds to their participants and, ultimately, to the bonds' beneficial owners. Ex. B (First Binnie Decl.) at ¶¶ 8-12; Ex. C (Second Binnie Decl.) at ¶¶ 7-9.

---

*State Street Bank & Trust Co.*, 11 N.Y.3d 146, 156 (2008) ("The trustee under a corporate indenture . . . has his rights and duties defined . . . exclusively by the terms of the agreement.") (citations omitted).

[3] Unless otherwise specified, all references herein to "Ex." are to exhibits to the July 10, 2014 Declaration of Evan K. Farber, filed herewith.

The Injunctions bind this payment process and all "participants in the payment process of the Exchange Bonds"—including the Trustee, certain of its affiliates, and its agents. *See* Dkt. #425; *see also* Dkt. # 424.[4] Under Rule 65(d)(2) of the Federal Rules of Civil Procedure, these participants are thus "prohibited from aiding and abetting any violations" of the Injunctions, including "any effort" by the Republic "to make payments under the terms of the Exchange Bonds without also concurrently or in advance making a Ratable Payment to Plaintiffs."

The Injunctions became effective on June 18, 2014, and the next scheduled Exchange Bond payment was June 30, 2014. On June 23, 2014, in anticipation of the impending payment date, the Trustee asked the Republic to certify, pursuant to section 5.7 of the Indenture, that it would comply with the Injunctions and make ratable payments to Plaintiffs. *See* Ex. D (June 23, 2014 letter from Eric A. Schaffer, Esq., to Carmine D. Boccuzzi, Esq.). The Trustee received no response to this communication. Instead, on June 26, 2014, Argentina transferred €225,852,475.66 and $230,922,521.14, for a total aggregate amount of approximately $539 million, to the Trustee's Banco Central Accounts for the apparent purpose of making payments due on the Exchange Bonds. *See* Ex. E (June 27, 2014 Tr.), at 11:25-13:12. The Republic did not, however, make a Ratable Payment to Plaintiffs in advance of, or concurrently with, this transfer.

## II. BNY Mellon Complies With The Injunctions And Maintains The Funds At Banco Central

At the subsequent June 27 hearing, the Trustee explained that it had received the Funds and maintained them in its Banco Central Accounts. *Id.* at 13:13-17, 15:7-15. This Court observed that the Trustee "didn't do anything wrong" in maintaining the Funds in its accounts

---

[4]   Unless otherwise specified, all references herein to "Dkt." are to documents filed in Case 1:08-cv-06978-TPG.

and that it was both "proper[]" and "very very good" for BNY Mellon to do so. *Id*. at 33:3-7. The Court also found that Argentina's payment of the Funds was "illegal" and "a violation of court orders binding on the Republic." *Id*. at 24:2, 33:1-2.

The Court rejected the suggestion that interpleading the Funds might be an appropriate course. Instead, this Court indicated that the Funds "should be returned" to Argentina. *Id*. at 32:23-24, 33:13-14. The Court also directed Plaintiffs to submit a proposed order regarding the Republic's violation and the appropriate disposition of the Funds, and approved the Trustee's request to "work with" Plaintiffs to craft an order that "truly leaves [BNY Mellon] not exposed to any liability where it has complied with [the Court's] order[s]." *Id*. at 36:11-15.

Plaintiffs and the Trustee subsequently conferred. Although the Trustee emphasized that an order directing return of the Funds could subject the Trustee to potential liability—and therefore proposed holding the Funds in its Banco Central Accounts until the various disputes related to their distribution could be resolved—Plaintiffs disagreed. On July 1, 2014, Plaintiffs submitted a proposed order requiring the Trustee "to return to Argentina the Funds and other funds, if any, that Argentina has transferred to BNY relating to payments on the Exchange Bonds due on or after June 16, 2014." *See* Case 1:10-cv-01602-TPG, Dkt. 278 (Plaintiffs' Proposed Order), at ¶ 2. In response, the Trustee filed a letter with this Court reiterating its concerns about Plaintiffs' proposal and requesting the opportunity to file this Motion for Clarification. Dkt. # 552.

### III. The Exchange Holders And The Republic Threaten Litigation Against The Trustee In Foreign Jurisdictions For Adhering To This Court's Orders

The Trustee has faithfully complied with the Injunctions and its duties under the Indenture. Nonetheless, nearly every economic stakeholder in this litigation has either sued or threatened to sue the Trustee. Immediately following the June 27 hearing, the Trustee received

correspondence from numerous Exchange Holders threatening suit if the Trustee returned the Funds to Argentina. Ex. G. Several days later, counsel for "certain investment funds . . . with very substantial holdings in series of Euro-Denominated Bonds" threatened to "seek an injunction from the English court, without notice" to the Trustee unless the Trustee confirmed that it would "maintain the funds in its account at Banco Central in Argentina, pending resolution of this matter by an English court." Ex. H.

Argentina joined the chorus. In a press release on July 2, 2014, the Argentine Ministry of Economy and Public Finance asserted that "the Bank of New York continues to breach its obligations by not allowing all bondholders to get paid." Ex. I. Argentina followed up this press release with a letter to the Trustee threatening litigation if the Trustee did not distribute the Funds to the Exchange Holders.[5] Ex. J.

Nevertheless, in compliance with the Court's Injunctions, the Trustee continues to withhold payment and maintain the money in its Banco Central Accounts in accord with the Injunctions.

## ARGUMENT

**I.      The Trustee Seeks Clarification Of The Injunctions**

The Injunctions provide that any non-party that requires clarification "may make an application" and that "[s]uch clarification will be promptly provided." Injunctions at 6-7 (Dkt. #425). Similarly, the Second Circuit instructed that "district courts will not 'withhold a clarification in the light of a concrete situation'" and that "[t]he doors of the district court

---

[5]   In addition to the Exchange Holders and the Republic, Plaintiffs have warned the Trustee that they would seek to hold the Trustee in contempt if it paid the Exchange Holders in violation of the Injunctions. *See* Ex. K. Similarly, the Trustee has received correspondence from other holders of defaulted bonds, threatening suit if the Trustee pays the Exchange Holders. *See* Ex. L.

obviously remain open for such applications."  *NML Capital Ltd. v. Republic of Argentina*, 727 F.3d 230, 243 (2d Cir. 2013).

The Trustee now seeks clarification in the form of an order that would preserve the status quo, advance the objectives of the Injunctions, and minimize any threat to the Trustee for its efforts to comply with this Court's orders.  Specifically, the Trustee seeks clarification that it may comply with this Court's orders, including the Injunctions, by retaining the Funds in its Banco Central Accounts pending final resolution of the disputes related to the transfer of the Funds.  In the alternative, the Trustee seeks clarification that it will be required to return the Funds to Argentina only if it receives specific wiring instructions from Argentina and assurances from the Court that no liability will follow from returning the Funds.

## II. The Court Should Clarify That The Trustee Should Maintain The Status Quo By Holding The Funds In Its Banco Central Accounts

### A. An Order Requiring Return Of The Funds Would Increase The Trustee's Potential Liability Exposure And Violate Due Process

*Returning the Funds creates potential liability risks and potentially conflicting obligations for the Trustee.*  As described above, the Trustee recently received correspondence from Exchange Holders and the Republic expressly threatening litigation against the Trustee if it returns the Funds to Argentina instead of transferring them to the Exchange Holders.  *See* Ex. G, Ex. H.  Exchange Holders have stated that they will bring suit against the Trustee in an English court.  And Holders have already filed an action pending in Belgium in which they seek an order compelling the Trustee's agents not to comply with the Injunctions and instead to distribute payments to the Exchange Holders, regardless of whether the Republic makes a Ratable Payment to the Plaintiffs.  *See* Ex. F.  The Republic, too, has threatened litigation and vowed to seek all appropriate relief—presumably in a court outside of the United States—if the Funds held by the Trustee are not paid to the Exchange Holders, notwithstanding that it made no Ratable Payment.

*See* Ex. J. In short, an order directing return of the funds would alternately expose the Trustee to (1) costly litigation with the potential for a large damage recovery and (2) potentially conflicting orders issued by other courts, including courts in other countries, with no perceptible means of reconciling the conflicting duties.

Against this backdrop, an order directing return of the Funds would be fundamentally unfair. The Trustee has complied fully with the Injunctions and its duties under the Indenture. Yet, a mandatory directive to return the Funds would threaten immediate harm to the Trustee—a result that equity does not countenance. *See Grain Traders, Inc. v. Citibank, N.A.*, 160 F.3d 97, 102 (2d Cir. 1998) (declining to enjoin funds transfer where injunction would lead to "uncertainty as to rights and liabilities, [] create a risk of multiple or inconsistent liabilities, and [] require intermediary banks to investigate the financial circumstances and various legal relations of the other parties to the transfer"); *Nemer Jeep-Eagle, Inc. v. Jeep-Eagle Sales Corp.*, 992 F.2d 430, 436 (2d Cir. 1993) (citing Restatement (Second) of Contracts § 364(1)(b) ("Specific performance or an injunction will be refused if such relief would be unfair because . . . (b) the relief would cause unreasonable hardship or loss to . . . third persons.")); *Cook Inc. v. Boston Sci. Corp.*, 333 F.3d 737, 743-44 (7th Cir. 2003) (modifying injunction in contract case because it "violate[d] the principle that in determining the appropriate scope of an injunction the judge must give due weight to the injunction's possible effect on innocent third parties"); *United States v. Zang*, 703 F.2d 1186, 1195 (10th Cir. 1982) ("[T]he interests of innocent third parties should be protected.").

***An order affirmatively compelling the non-party Trustee to return the Funds raises significant due process concerns.*** Unlike an injunction prohibiting the Trustee from aiding and abetting defined actions by a party to the litigation, Fed. R. Civ. P. 65(d)(2) does not purport to

authorize orders imposing affirmative, independent obligations on non-parties. As entered, the Injunctions are directed at the payment process and serve to restrain BNY Mellon from making distributions of the Funds to the Exchange Holders if no Ratable Payment is made. But through their proposed order, Plaintiffs seek more expansive relief, through the imposition of a mandatory directive—not a restraint—requiring the Trustee to return Funds to the Republic. This proposed return of the Funds is not provided for in the Indenture and goes beyond the scope of the Injunctions. And, Plaintiffs insist on imposing that obligation without making any showing justifying mandatory injunctive relief against a non-party or citing any authority that would permit such an extraordinary result.[6]

It is a fundamental tenet of due process that "everyone should have his own day in court." *Taylor v. Sturgell*, 553 U.S. 880, 892-93 (2008) (quoting *Richards v. Jefferson County*, 517 U.S. 793, 798 (1996)). Therefore, it is improper "to make punishable as a contempt the conduct of persons who act independently and whose rights have not been adjudged according to law." *Chase National Bank v. City of Norwalk*, 291 U.S. 431, 437 (1934); *see also Scott v. Donald*, 165 U.S. 107, 117 (1897) ("The decree is also objectionable because it enjoins persons not parties to the suit."); *Zenith Radio Corp. v. Hazeltine Research, Inc.*, 395 U.S. 100, 112 (1969) (holding

---

[6] Plaintiffs' insistence on the return of the Funds is unsupported by process or authority; it likewise does not provide for any security for the Trustee. If Plaintiffs truly want to obtain an injunction compelling return of the Funds, they should be compelled to post an adequate bond to account for the liability exposure the Trustee would face as a result of following that directive in advance of a resolution on the merits of the various claims to the distribution. *See* Fed. R. Civ. P. 65(c) (conditioning the grant of a preliminary injunction on the posting of "security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined"); *Blumenthal v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 910 F.2d 1049, 1054 (2d Cir. 1990) ("the theory underlying" Rule 65(c) is "that the applicant consents to liability up to the amount of the bond, as the price for the injunction" (citations omitted); *Nokia Corp. v. InterDigital, Inc.*, 645 F.3d 553, 557-58 (2d Cir. 2011) (collecting cases, including *Blumenthal*, for the same proposition; "the moving party must demonstrate confidence in his legal position by posting bond in an amount sufficient to protect his adversary from loss" (quoting *Edgar v. MITE Corp.*, 457 U.S. 624, 649 (1982) (Stevens, J., concurring))).

that it is "error to enter [an] injunction against" a non-party "without having made this determination in a proceeding to which the [non-party] was a party"); *Regal Knitwear Co. v. NLRB*, 324 U.S. 9, 13 (1945) (injunctive power is not "so broad as to make punishable the conduct of persons who act independently and whose rights have not been adjudged according to law").

It also is axiomatic that Rule 65(d)(2) cannot, and does not, override these core due process limitations. Rule 65 is not a roving license allowing courts to enjoin the world at large. *General Building Contractors Association, Inc. v. Pennsylvania*, 458 U.S. 375, 399-402 (1982); *see also EEOC v. Local 638*, 81 F.3d 1162, 1180 (2d Cir. 1996) ("If the plaintiffs wish to have sanctions imposed on the Contractors or to fashion remedies as to them that are more than minor and ancillary, they may do so only upon establishing the Contractors' liability after adhering to the appropriate rules of civil procedure."); *Vacco v. Operation Rescue Nat'l*, 80 F.3d 64, 70 (2d Cir. 1996) ("Rule 65(d) codifies the well-established principle that, in exercising its equitable powers, a court cannot lawfully enjoin the world at large." (internal quotation marks omitted)); *Heyman v. Kline*, 444 F.2d 65, 65-66 (2d Cir. 1971) ("Rule 65(d) does not grant a court power so broad as to make punishable the conduct of persons who act independently and whose rights have not been adjudged according to law." (internal quotation marks omitted)).

In short, the absence of any adequate process supporting a mandatory order directing a non-party who has not acted unlawfully to return the Funds presents due process problems of the most basic sort.

***Return of the Funds poses several practical problems for the Trustee under the Indenture and in the absence of wiring instructions.*** To begin with, return of the Funds would work a deprivation of the Trustee's own property rights derived from the Indenture. In that

regard, the Trustee has a senior charging lien on funds received from the Republic, securing payment of the Trustee's costs and expenses and indemnifying the Trustee against any losses. *See* Ex. A (Indenture), at § 5.6.  Return of the Funds thus would effectively force the Trustee to give up its collateral, which raises constitutional considerations of its own.  *See Wright v. Union Cent. Life Ins. Co.*, 311 U.S. 273 (1940) (mortgage lien constitutes property interest under the Fifth Amendment); *Louisville Joint Stock Land Bank v. Radford*, 295 U.S. 555 (1935) (mortgagee entitled to compensation for the relinquishment of its lien).

In addition, the Exchange Holders and the Republic insist that the Indenture compels that payment be made, notwithstanding the Injunctions or any order to return the Funds.  The Trustee maintains that payment of the Funds cannot be made without risking a contempt citation and the Indenture does not compel it to take that risk.  Specifically, the Indenture contains several exculpatory provisions, which are designed to protect BNY Mellon from exposure to liability while acting as Trustee.  For example, the Indenture provides that BNY Mellon cannot be liable for any actions taken in good faith absent gross negligence, *see* Ex. A (Indenture) at §§ 5.1(c), 5.2(vi), that BNY Mellon cannot be held liable for any consequential or incidental losses or damages of any kind, *id.* at § 5.1(e), that BNY Mellon is not required to incur personal financial liability in the performance of its duties, *id.* at § 5.1(g), and that BNY Mellon has no duty to act without security or indemnity satisfactory to the Trustee, including potential costs, expenses, and liabilities, *id.* at § 5.1(v).  Of particular importance here is section 5.2(xx), which states:

> [N]o provision in this Indenture shall require the Trustee to do anything which may (i) be illegal or contrary to applicable law or regulation; or (ii) cause it to expend or risk its own funds or otherwise incur any liability in the performance of any of its duties or in the exercise of any of its rights, powers or discretions, if it shall have reasonable grounds for believing that repayment of such funds or adequate indemnity against such risk or liability is not assured to it.

*Id.* at § 5.2(xx).

Here, Plaintiffs' proposed order directing return of the Funds preempts what the Indenture would otherwise require to protect the Trustee's interests in its handling of the Funds. It is apparent that both the Euro Bondholders and the Republic have threatened litigation if the Trustee acts to return the Funds. In the ordinary course, the Indenture would allow the Trustee to avoid that risk.

As yet a further complication, the Trustee also must have Argentina's cooperation in order to "return" the Funds. Most specifically, the Trustee cannot effect a return without receipt of wiring instructions, for a specific account at a specific bank, from Argentina. Plaintiffs' proposed order does not require such instructions; instead, it simply assumes that payment can be made. Plaintiffs' proposed order does provide, in the alternative, that if Argentina "blocks or prevents BNY's return of the Funds . . . then BNY shall file an interpleader action and deposit the Funds . . . with this Court." Plaintiffs' language acknowledges that Argentina may not provide wiring instructions, but it does not require Argentina to provide such instructions as an affirmative obligation of the Republic or as a prerequisite to any action by the Trustee, nor does it prevent the Republic or Exchange Holders from suing the Trustee in foreign jurisdictions. Given the Republic's threat to sue the Trustee if the Funds are not forwarded to the Exchange Holders, the Trustee's concerns are well-founded.

### B. Maintaining The Funds In BNY Mellon's Banco Central Accounts Significantly Reduces The Risks For The Trustee And Preserves The Status Quo

In marked contrast to Plaintiffs' proposed order, maintaining the Funds in the Banco Central Accounts gives full effect to the Injunctions. No distribution would be made because no Ratable Payment has been made. This also preserves the status quo, which was a chief concern of the Court at the June 27 hearing. *See* Ex. E at 19:25-21:4. Plaintiffs' July 2, 2014 reply letter confirms this. While purporting to argue otherwise, Plaintiffs openly admit that leaving the

Funds where they are "would leave in place" the current state of affairs. *See* Case 1:10-cv-01602-TPG, Dkt. #279

To that end, the Trustee submits an alternative proposed order which is similar to the one submitted by Plaintiffs, but which requires the Trustee to maintain the Funds in place, rather than return them. Ex. M. The Trustee's alternative minimizes the threat of liability for the Trustee because it allows every interested party an opportunity to be heard on the final disposition of the Funds. It also avoids the due process problems attendant to an order directing return of the Funds and permits the Trustee's rights under the Indenture to be clarified. Plaintiffs are not prejudiced because they will know that no distribution of the Funds has been made.

If, instead, the Court is inclined to order the Trustee to return the Funds to Argentina, rather than retain them in the accounts where they currently reside, the Court still should reject the proposed order and enter a different order (1) making the Trustee's duty to return the Funds contingent on Argentina providing it with wiring instructions, and (2) providing that the Trustee cannot be held liable for following the Court's directive to return the Funds. Ex. N. This alternative order would not mandate interpleading the Funds.

Although the Trustee suggested the possibility of filing an interpleader at the June 27 hearing, the Euro Bondholders since have stated unequivocally that they would view an interpleader as a breach of the Indenture. Interpleader clearly would not avoid subjecting the Trustee to litigation in unrelated fora of the Euro Bondholders' choosing, with which even the interpleader might fail to fulfill its intended purpose. Finally, for the same reasons that the Court lacks the authority to order a non-party to take the affirmative step of returning the Funds to Argentina, it likewise lacks the authority to order a non-party to take the affirmative step of filing an interpleader and depositing the Funds with the Court.

**CONCLUSION**

For the reasons stated above, the Trustee respectfully requests that the Court grant this request for clarification and enter its proposed order.  Ex. M.

Alternatively, if the Court concludes that the Funds must be returned to the Republic, the Trustee respectfully requests that the Court enter its alternative proposed order.  Ex. N.

                                                   Respectfully submitted,

                                                   REED SMITH LLP

                                                 By:  */s/ Eric A. Schaffer*
                                                      Eric A. Schaffer (ES-4615)
                                                      C. Neil Gray (CG-9038)
                                                      Evan K. Farber (EF-1049)
                                                      599 Lexington Avenue
                                                      New York, NY 10022
                                                      (212) 521-5400

                                                      *Attorneys for Non-Party The Bank*
                                                      *of New York Mellon, as Indenture*
                                                      *Trustee*

Dated: New York, New York
          July 10, 2014