**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

NML CAPITAL, LTD.,

       Plaintiff,

    -against-

THE REPUBLIC OF ARGENTINA,

       Defendant.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

    08-cv-6978 (TPG)
    09-cv-1707 (TPG)
    09-cv-1708 (TPG)

AURELIUS CAPITAL MASTER, LTD. and
ACP MASTER, LTD.,

       Plaintiffs,

    -against-

THE REPUBLIC OF ARGENTINA,

       Defendant.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

    09-cv-8757 (TPG)
    09-cv-10620 (TPG)

*(captions continue on following pages)*


**REPLY MEMORANDUM OF LAW IN SUPPORT OF THE MOTION OF**
**NON-PARTY BANK OF NEW YORK MELLON, AS INDENTURE TRUSTEE,**
**FOR CLARIFICATION OF AMENDED FEBRUARY 23, 2012 ORDERS**

```
                                            :
AURELIUS OPPORTUNITIES FUND II,                  10-cv-1602 (TPG)
LLC and AURELIUS CAPITAL MASTER,            :    10-cv-3507 (TPG)
LTD.,
                                            :

              Plaintiffs,                   :

        -against-                           :

THE REPUBLIC OF ARGENTINA,                  :

              Defendant.                    :

- - - - - - - - - - - - - - - - - - - - -  x


                                            :
AURELIUS CAPITAL MASTER, LTD. and                10-cv-3970 (TPG)
AURELIUS OPPORTUNITIES FUND II,             :    10-cv-8339 (TPG)
LLC,
                                            :

              Plaintiffs,                   :

        -against-                           :

THE REPUBLIC OF ARGENTINA,                  :

              Defendant.                    :

- - - - - - - - - - - - - - - - - - - - -  x


                                            :
BLUE ANGEL CAPITAL I LLC,                        10-cv-4101 (TPG)
                                            :    10-cv-4782 (TPG)
              Plaintiff,
                                            :
        -against-
                                            :
THE REPUBLIC OF ARGENTINA,
                                            :
              Defendant.
                                            :
- - - - - - - - - - - - - - - - - - - - -  x    (captions continue on following page)
```

PABLO ALBERTO VARELA, et al.,      :      10-cv-5338 (TPG)

                                    :

       Plaintiffs,                     :

     -against-                         :

THE REPUBLIC OF ARGENTINA,         :

       Defendant.                    :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - -  x


OLIFANT FUND, LTD.,                :      10-cv-9587 (TPG)

                                    :

       Plaintiff,                    :

     -against-                         :

THE REPUBLIC OF ARGENTINA,         :

       Defendant.                    :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - -  x


**REED SMITH LLP**
Eric A. Schaffer
C. Neil Gray
Evan K. Farber
599 Lexington Avenue
New York, NY 10022
(212) 521-5400

*Attorneys for Non-Party The Bank of New York Mellon, as Indenture Trustee*

**Table of Contents**

PRELIMINARY STATEMENT ................................................................................................ 1

ARGUMENT ......................................................................................................................... 3

    I.     Allowing BNY Mellon To Maintain The Funds In Its Banco
         Central Accounts Provides It With Security Against Litigation,
         Implements The Injunctions, And Preserves The Status Quo ............................... 3

    II.    An Order Directing BNY Mellon To Return The Funds To
         Argentina Goes Beyond The Scope Of The Injunctions, Is Not
         Necessary To Protect Plaintiffs' Interests, And Violates
         Controlling Law ............................................................................................. 6

    III.   Under Any Circumstances, BNY Mellon Should Not Be Required
         To Return Or Interplead The Funds Without Further Direction
         From This Court .......................................................................................... 10

CONCLUSION .................................................................................................................... 10

## Table of Authorities

**Cases**

*AG Capital Funding Partners, L.P. v. State Street Bank & Trust Co.*,
  11 N.Y.3d 146 (2008) ........................................................................................... 6

*Bartnicki v. Vopper*,
  532 U.S. 514 (2001) .............................................................................................. 8

*Bennis v. Michigan*,
  516 U.S. 442 (1996) ............................................................................................ 10

*Bordenkircher v. Hayes*,
  434 U.S. 357 (1978) .............................................................................................. 8

*City of New York v. Mickalis Pawn Shop*,
  645 F.3d 114 (2d Cir. 2011) ................................................................................. 9

*Elliott Assocs. v. J. Henry Schroder Bank & Trust Co.*,
  838 F.2d 66 (2d Cir. 1988) ................................................................................... 5

*Grupo Mexicano de Desarollo, S.A. v. Alliance Bond Fund*,
  527 U.S. 308 (1999) .............................................................................................. 9

*Louisville Joint Stock Land Bank v. Radford*,
  295 U.S. 555 (1935) .............................................................................................. 5

*Melendres v. Arpaio*,
  695 F.3d 990 (9th Cir. 2012) ................................................................................ 9

*NML Capital Ltd. v. Republic of Argentina*,
  727 F.3d 230, 243 (2d Cir. 2013) ..................................................................... 8, 9

*Shakhnes v. Berlin*,
  689 F.3d 244 (2d Cir. 2012) ................................................................................. 9

*St. Ann v. Palisi*,
  495 F.2d 423 (5th Cir. 1974) .............................................................................. 10

*State Farm Auto. Mut. Ins. Co. v. Campbell*,
  538 U.S. 408 (2003) .............................................................................................. 8

*United States v. Swift & Co.*,
  286 U.S. 106 (1932) .............................................................................................. 7

*Wright v. Union Cent. Life Ins. Co.*,
  311 U.S. 273 (1940) .............................................................................................. 5

**Statutes**

N.Y. U.C.C. § 4-A-503 .................................................................................................. 7

**Rules**

Fed. R. Civ. P. 59(e) .................................................................................................... 7

Fed. R. Civ. P. 60(b) .................................................................................................... 7

## PRELIMINARY STATEMENT

As Plaintiffs concede, non-party BNY Mellon "has made clear it will not violate this Court's orders" and that it is "committed to obeying this Court's orders."  *See* Pls.' Opp'n to Euro Bondholders' Mot. [Dkt. 592] at 2, 4-5.[1]  The Court has further confirmed that BNY Mellon, by holding the Funds that the Republic transferred to its Banco Central Accounts, "didn't do anything wrong"; rather, it acted "properly."  *See* Ex. E. (June 27, 2014 Tr.) at 33:3-7. Although BNY Mellon has not done, and is not threatening to do, anything unlawful, Plaintiffs nevertheless insist that this Court should direct BNY Mellon to return the Funds—knowing full well that BNY Mellon faces potential litigation in multiple foreign jurisdictions if it does so. Plaintiffs cite no authority supporting their unprecedented demand for invoking a court's equitable power to harm a non-party who has acted in a lawful manner.  Nor do they offer any colorable reason why such an unprecedented step is needed to protect their interests.   For multiple reasons, this Court should reject Plaintiffs' demand and enter BNY Mellon's proposed order allowing it to retain the Funds.

*First*, Plaintiffs' principal argument, that the matter is settled because this Court previously stated that BNY Mellon should return the Funds, is difficult to fathom.  After making that statement, this Court granted BNY Mellon's request to file its motion to clarify whether the Injunctions supported such a return, no order has yet been entered, and BNY Mellon's motion sets forth several compelling and unrebutted reasons why returning the Funds would be improper as a matter of law and equity.

---

[1]  Terms defined in BNY Mellon's Memorandum of Law in Support of its Motion for Clarification, dated July 10, 2014 [Dkt. 578] are the same in this Reply.  Unless otherwise specified, all references herein to "Dkt." are to documents filed in Case 1:08-cv-06978-TPG, and all references herein to "Ex." are to exhibits to the July 10, 2014 Declaration of Evan K. Farber [Dkt. 582].

***Second***, Plaintiffs make their demand for affirmative relief without regard for the interests of BNY Mellon, which finds itself threatened with litigation on three continents. Plaintiffs claim that BNY Mellon is protected against that risk by virtue of the Indenture. But their proposed order would, in fact, deprive BNY Mellon of any practical recourse except to shoulder the burdens of these costly litigation(s) without first obtaining the protections and security provided by the Indenture. Those litigation(s), in turn, would leave the Trustee open to conflicting legal obligations that would generate still more litigation costs. Ordering the Trustee to hold the Funds, on the other hand, allows the Trustee to defray these costs and better protects its rights under the Indenture, while simultaneously reducing the likelihood of conflicting legal obligations.

***Third***, leaving the Funds in BNY Mellon's accounts in no way impairs the existing Injunctions and, in fact, serves their purpose. To protect Plaintiffs' interest, the Injunctions provide that no payment should be made to the Exchange Holders unless a Ratable Payment is made to Plaintiffs. That is exactly what has transpired as a result of the Trustee holding the Funds: BNY Mellon complied with this Court's Injunctions against "aiding and abetting" Argentina by not forwarding the payments. As a result, Plaintiffs' interests are protected, this Court's Injunctions are implemented, and no one has received unequal treatment.

***Fourth***, while Plaintiffs dismiss BNY Mellon's due process arguments, they seek an order plainly outside the scope of the existing Injunctions. BNY Mellon is not a party to these proceedings and it was Argentina, not BNY Mellon, that violated the Injunctions. Therefore, the Court certainly is free to direct its coercive power at Argentina to rectify this violation. But Plaintiffs do not seek that relief; they want this Court to force BNY Mellon, a non-party, to

return the Funds.  Due process will not countenance imposing a mandatory injunction on a non-party who has not acted unlawfully.

In short, Plaintiffs offer no credible, practical, or lawful reason to oppose BNY Mellon's requested order that the Funds should remain in its Banco Central Accounts.  The Court should enter BNY Mellon's requested order authorizing it to maintain the Funds in those accounts.[2]

## ARGUMENT

### I.  Allowing BNY Mellon To Maintain The Funds In Its Banco Central Accounts Provides It With Security Against Litigation, Implements The Injunctions, And Preserves The Status Quo

As Plaintiffs acknowledge, Argentina's attempt to violate the Injunctions has been "thwarted" by BNY Mellon's compliance with the Injunctions, thereby fulfilling the purpose of the Injunctions.  *See* Pls.' Opp'n to Euro Bondholders' Mot. [Dkt. 592] at 13 ("But [Argentina's attempted violation] has been thwarted by the law-abiding third parties that process Argentina's payments on the Exchange Bonds (such as BNY Mellon)."); Case 1:09-cv-08757-TPG (Pls.' Opp'n) [Dkt. 431] at 4 ("Recognizing that the transfers were in violation of the [Injunctions], BNY did not further transfer the Funds as it normally would have, and the Funds remain in BNY's account[s] at BCRA.").

Given this reality, it is unclear why Plaintiffs seek to expand the present Injunctions to force BNY Mellon to return the Funds.[3]  In any event, Plaintiffs' contention that it makes no

---

[2]   Plaintiffs question why BNY Mellon requests leave to maintain the Funds in its Banco Central Accounts "pending further order of this Court."  *See* Case 1:09-cv-08757-TPG (Pls.' Opp'n) [Dkt. 431] at 6.  The reasons are plain enough.  Allowing the Trustee to maintain the Funds subject to further court order maintains the Trustee's senior lien on the Funds, ensures the availability of the Funds as this litigation moves forward, and reduces the risks that the immediately threatened litigation will produce conflicting legal demands.

[3]   The parties' recent public pronouncements suggest that Plaintiffs seek to force an event of default under the Indenture by requiring BNY Mellon to return the Funds.  *See* July 21, 2014 Declaration of Evan Farber, filed herewith.  But forcing BNY Mellon to return the Funds to Argentina simply to dangle the risk of default under the Indenture—and thus bolster Plaintiffs' negotiating leverage with

difference to BNY Mellon whether the Funds are returned or held—because the Indenture's exculpatory provisions immunize BNY Mellon and because the Trustee "assumed the risk" that a return order would yield numerous litigations—does not withstand reasoned analysis.  There is a profound difference between the two orders as far as BNY Mellon is concerned.

*First*, as the record shows, the most immediate litigation threats presently advanced against BNY Mellon are aimed at the return of the Funds.  For example, if this Court orders return, the Euro Bondholders have threatened an immediate injunction application in an English court to compel BNY Mellon to maintain the Funds in the Banco Central Accounts.  Ex. H.  That litigation would threaten BNY Mellon with irreconcilable orders, each carrying with it severe sanctions for breach.  BNY Mellon's proposed order, by comparison, reduces the threat of conflicting orders because the right to the Funds can be litigated in a more orderly fashion while they are held by the Trustee (rather than Argentina).

*Second*, an order to maintain the Funds in the Bacno Central Accounts preserves the Trustee's senior lien and ensures that the Funds are available, consistent with the Indenture, to offset any liability or expenses incurred by the Trustee as a result of the threatened litigation(s).  *See* Ex. A (Indenture) at § 5.6.  The Funds are the only identifiable moneys available to cover BNY Mellon's litigation expenses if Argentina refused to honor its indemnification duties to the Trustee; given Argentina's track record in this litigation, that is a genuine concern.  An order forcing BNY Mellon to return its collateral would deprive the Trustee of this protection and

---

the defendant—is neither contemplated by the Injunctions nor a permissible basis for seeking such unprecedented relief against a law-abiding non-party such as BNY Mellon.

Returning the Funds also would upend the status quo, moving the Funds back to Argentina at the very time when Plaintiffs express concern that Argentina is "hatching a plan" to circumvent BNY Mellon and pay certain of the Exchange Holders.  *See* Pls.' Opp'n to Euro Bondholders' Mot. [Dkt. 592] at 5.

contravene the Fifth Amendment.[4]  *See, e.g., Wright v. Union Cent. Life Ins. Co.*, 311 U.S. 273 (1940); *Louisville Joint Stock Land Bank v. Radford*, 295 U.S. 555 (1935).

*Third*, the Indenture's exculpatory provisions do not, as Plaintiffs contend, render academic the differences between returning and holding the Funds.  The exculpatory provisions will not prevent lawsuits from being filed or the costs attendant on multi-forum litigation.  And while BNY Mellon certainly believes these provisions should operate to prevent any liability as a result of its compliance with this Court's orders, there is no guarantee that every court around the globe will agree, just as there is no alternative mechanism to pay litigation costs.[5]  Lastly, the protection afforded by the exculpatory provisions may be lessened if BNY Mellon is compelled to take affirmative action (returning the Funds to Argentina), rather than simply being prevented from taking affirmative action (paying the Funds to the Exchange Holders).

*Fourth*, although BNY Mellon has consistently complied with this Court's orders, it indisputably faces a potential loss of its contractual rights if ordered to give up the very funds indemnifying it from the expense and liability the Trustee faces as a result of its compliance. **BNY Mellon did not assume that risk.**  Indeed, an indenture trustee is not obligated to assume that risk without indemnification as provided for in the Indenture.  *See Elliott Assocs. v. J. Henry Schroder Bank & Trust Co.*, 838 F.2d 66, 71 (2d Cir. 1988) (It is "well established under state common law that the duties of an indenture trustee are strictly defined and limited to the terms of

---

[4]   Although BNY Mellon has a senior lien on the Funds, it does not otherwise gain from holding them in its Banco Central Accounts.  The accounts are non-interest bearing, and BNY Mellon can use the Funds in a manner consistent with the Indenture.

[5]   If Plaintiffs believe otherwise, they should be willing to post an adequate bond to account for the liability exposure and costs the Trustee could face as a result of returning the Funds.  *See* Mot. [Dkt. 578] at 9 n.6.  Although Plaintiffs claim that their proposed order is not new relief, nothing in the Injunctions requires BNY Mellon to return the Funds.  If BNY Mellon were required to take this new, affirmative action, it would risk immediate and irreparable harm from the loss of funds that otherwise could be used to indemnify it for its expenses and potential damages arising from litigation directly attributable to BNY Mellon's compliance with this Court's orders.

the indenture . . . .") (citations omitted); *AG Capital Funding Partners, L.P. v. State Street Bank & Trust Co.*, 11 N.Y.3d 146, 156 (2008) ("The trustee under a corporate indenture . . . has his rights and duties defined . . . exclusively by the terms of the agreement.") (citations omitted).

*Fifth*, while Plaintiffs are content to visit this harm on BNY Mellon through a mandatory order compelling the Funds' return, an order directing that the Funds be held in the Accounts complies with the Injunctions, preserves the status quo, and better protects the Trustee from liability—a goal this Court embraced.  The purpose of the Injunctions is to "provid[e] equal treatment to both [Plaintiffs] and those owed under the terms of the Exchange Bonds."  [Dkt. 425] at ¶ 1(c).  If BNY Mellon holds the Funds, BNY Mellon will comply with the Injunctions, Plaintiffs will be treated equally, BNY Mellon will have an offset for its litigation costs, and it will have a greater chance to preserve its rights under the Indenture.  That is the result for which equity should strive; there is no perceptible reason for Plaintiffs not to urge it.

## II.    An Order Directing BNY Mellon To Return The Funds To Argentina Goes Beyond The Scope Of The Injunctions, Is Not Necessary To Protect Plaintiffs' Interests, And Violates Controlling Law

Apart from the practical problems it engenders and harm it inflicts, Plaintiffs' demand that this Court use its coercive power to compel non-party BNY Mellon to return the Funds cannot be reconciled with the Injunctions or fundamental concepts of due process.

*An order compelling non-party BNY Mellon to take the affirmative action of returning the Funds to Argentina falls outside the scope of the Injunctions.*  *See* Mot. [Dkt. 578] at 9.  In addition to enjoining the Republic, the Injunctions bind the Exchange Bond payment process, "prohibit[ing]" BNY Mellon from "aiding and abetting any violation" of the Injunction, "such as any effort to make payments under the terms of the Exchange Bonds without also concurrently or in advance making a Ratable Payment to [Plaintiffs]."  Injs. [Dkt. 425] at ¶¶ 2(e), 2(f); *see also* Op. [Dkt. 424] at 9.  The Injunctions, by their terms, do not contemplate the return of any

funds that Argentina might transfer to BNY Mellon in violation of the Injunctions.[6]  Plaintiffs' proposed order therefore calls for an expansion of the scope of the Injunctions.  Yet, they offer no justification for that expansion and the record here does not provide one.

While the Injunctions may be altered upon motion by a party, *see* Fed. R. Civ. P. 59(e), 60(b), that is appropriate only upon "a clear showing of grievous wrong evoked by new and unforeseen conditions." *United States v. Swift & Co.*, 286 U.S. 106, 119 (1932); *see also* Pls.' Opp'n to Euro Bondholders' Mot. [Dkt. 592] at 15.  Plaintiffs have not filed a Rule 60 motion and could not show it was "unforeseen" that Argentina would attempt to violate the Injunctions by transferring funds to BNY Mellon.[7]  The Injunctions, in fact, contemplated that might occur and provided that, in such circumstances, the Trustee could not pay the Exchange Holders.  That is exactly where things stand.  Plaintiffs' demand that BNY Mellon go further and return the Funds, therefore, should be rejected because they have not, and cannot, make the required showing for a modification of the Injunctions.

**Rule 65(d)(2) does not give the Court the power to compel BNY Mellon to take any affirmative action—including returning the Funds—outside of a formal contempt proceeding.** *See* Mem. [Dkt. # 578] at 8-10.  Plaintiffs argue that, because Argentina violated the Injunctions by transferring the Funds, the Court has authority to direct its coercive power at BNY Mellon and order a return of the Funds.  To support that assertion, Plaintiffs maintain that "[i]t makes no

---

[6]  Nor does any Indenture provision provide for the return of the Funds.  Indeed, the Indenture contemplates return of monies to Argentina only upon a written demand from Argentina and only after (1) satisfaction and discharge of the Indenture or (2) monies on deposit with the Trustee have remained unclaimed for a period of ten years (for principal) or five years (for interest).  See Ex. A (Indenture) at §§ 11.3, 11.4.

[7]  Modification of the Injunctions to provide for the return of the Funds also would be inconsistent with Article 4-A of New York's Uniform Commercial Code.  While § 4-A-503 allows restraints on the dissipation or release of enjoined funds, it does not permit the imposition of any obligation on financial institutions to affirmatively act.  *See* N.Y. U.C.C. § 4-A-503.  "No other injunction is permitted."  N.Y. U.C.C. § 4-A-503 comment.

difference whether the person bound under Rule 65 is the party itself, or a non-party acting in active concert or participation with the party." *See* Case 1:09-cv-08757-TPG (Pls.' Opp'n) [Dkt. 431] at 7-8.  But there is a world of difference between directing this Court's coercive power at a party (Argentina) that has violated an injunction, as opposed to a non-party (BNY Mellon) that manifestly has not.

To begin with, BNY Mellon "didn't do anything wrong" when it "properly held" the Funds, *see* Ex. E (June 27, 2014 Tr.) at 33:3-7, thereby "thwart[ing]" Argentina's attempted violation of the Injunctions, *see* Pls.' Opp'n to Euro Bondholders' Mot. [Dkt. 592] at 13.  Far from assisting Argentina in avoiding the Injunctions, BNY Mellon's action in holding the Funds implements them.  Accordingly, while the Court may punish a violation of the Injunctions in a proper proceeding, there is no violation to punish as far as the Trustee's conduct is concerned.

Further, as the Court of Appeals noted in affirming the Injunctions, they are directed "against no one except Argentina." *NML Capital Ltd. v. Republic of Argentina*, 727 F.3d 230, 243 (2d Cir. 2013).  All parties and this Court have acknowledged that BNY Mellon did not assist in—but rather "thwarted"—Argentina's violation of the Injunctions.  A desire to sanction a disobedient defendant is not a license to enjoin the purely lawful conduct of an innocent non-party. *See, e.g.*, *Bartnicki v. Vopper*, 532 U.S. 514, 529-30 (2001) (reasoning that "[t]he normal method of deterring unlawful conduct is to impose an appropriate punishment on the person who engages in it" and stating that "it would be quite remarkable to hold that speech by a law-abiding [person] can be suppressed in order to deter conduct by a non-law-abiding third party").  Indeed, the Due Process Clause prohibits punishing "lawful" conduct. *See State Farm Auto. Mut. Ins. Co. v. Campbell*, 538 U.S. 408, 421 (2003); *Bordenkircher v. Hayes*, 434 U.S.

357, 363 (1978) ("To punish a person because he has done what the law plainly allows him to do is a due process violation of the most basic sort . . . .") (citation omitted).

Plaintiffs argue that BNY Mellon's due process arguments are "old news" and should be "dismissed" because the Court of Appeals "held that due process requires only that a 'payment system participant' like BNY be given 'notice and the right to be heard' when it is 'summoned to answer for assisting in a violation.'"  *See* Case 1:09-cv-08757-TPG (Pls.' Opp'n) [Dkt. 431] at 8 (citing *NML Capital*, 727 F.3d at 243).  This argument proves BNY Mellon's point.  Because BNY Mellon has not assisted Argentina in any violation of the Injunctions, it cannot be summoned to answer for anything.  Moreover, Plaintiffs ask this Court to compel non-party BNY Mellon to act in an effort to punish Argentina without instituting an appropriate proceeding.  As BNY Mellon has noted, Rule 65 is not a roving license to enjoin a non-party which has not acted unlawfully and where there is no demonstrated need for coercive relief. Simply put, equity does not extend as far as Plaintiffs' demand.

Rather, "it is always in the public interest to prevent the violation of a party's constitutional rights," *Melendres v. Arpaio*, 695 F.3d 990, 1002 (9th Cir. 2012) (citations and internal quotation marks omitted), and courts are duty-bound to ensure that injunctive relief does not extend to conduct not otherwise unlawful, *see City of New York v. Mickalis Pawn Shop*, 645 F.3d 114, 144-45 (2d Cir. 2011); *Shakhnes v. Berlin*, 689 F.3d 244, 257 (2d Cir. 2012) ("An injunction is overbroad when it restrains defendants from engaging in legal conduct.") (citation omitted); *cf. Grupo Mexicano de Desarollo, S.A. v. Alliance Bond Fund*, 527 U.S. 308, 315 (1999) (injunctive relief impermissible where it "was issued not to enjoin unlawful conduct, but rather to render unlawful conduct that would otherwise be permissible").  This follows from "the basic concept of our system that legal burdens should bear some relationship to individual

responsibility or wrongdoing . . . ." *St. Ann v. Palisi*, 495 F.2d 423, 426 (5th Cir. 1974); *see also Bennis v. Michigan*, 516 U.S. 442, 458 (1996) (Ginsburg, J., concurring) (rejecting any "experiment to punish innocent third parties").

**III.    Under Any Circumstances, BNY Mellon Should Not Be Required To Return Or Interplead The Funds Without Further Direction From This Court**

If the Court chooses to order the Trustee to return the Funds, the Court should enter BNY Mellon's proposed alternative order making BNY Mellon's duty to return contingent on Argentina furnishing proper wiring instructions, providing that BNY Mellon cannot be held liable for following the Court's directive, and allowing BNY Mellon to maintain the Funds in its Banco Central Accounts if Argentina refuses to cooperate.  Mot. [Dkt. 578] at 13 (citing Ex. N).

Plaintiffs respond that if the Republic fails to cooperate, BNY Mellon instead should be required to interplead the Funds.  BNY Mellon believes it should be permitted to hold the Funds for the reasons advanced in its briefing.  If the Court is inclined to order interpleader, however, it should allow further briefing to provide BNY Mellon with adequate direction to protect its rights under the Indenture and to identify the parties which are deemed to have an interest in the Funds.

<u>CONCLUSION</u>

The Trustee respectfully requests that the Court grant its request for clarification and enter its proposed order.  Ex. M.  If the Court concludes that the Funds must be returned, the Trustee respectfully requests that the Court enter its alternative proposed order.  Ex. N.

Respectfully submitted,

REED SMITH LLP

By: _/s/ Eric A. Schaffer_
     Eric A. Schaffer (ES-4615)
     C. Neil Gray (CG-9038)
     Evan K. Farber (EF-1049)
     599 Lexington Avenue
     New York, NY 10022
     (212) 521-5400

     *Attorneys for Non-Party The Bank of*
     *New York Mellon, as Indenture Trustee*

Dated: New York, New York
       July 21, 2014