# CLEARY GOTTLIEB STEEN & HAMILTON LLP

ONE LIBERTY PLAZA
NEW YORK, NY 10006-1470
(212) 225-2000
FACSIMILE (212) 225-3999
WWW.CLEARYGOTTLIEB.COM

WASHINGTON, DC · PARIS · BRUSSELS · LONDON · MOSCOW
FRANKFURT · COLOGNE · ROME · MILAN · HONG KONG
BEIJING · BUENOS AIRES · SÃO PAULO · ABU DHABI · SEOUL

LAURENT ALPERT
VICTOR I LEWKOW
LESLIE N SILVERMAN
ROBERT L TORTORIELLO
LEE C BUCHHEIT
JAMES M PEASLEE
THOMAS J MOLONEY
JONATHAN I BLACKMAN
MICHAEL L RYAN
ROBERT P DAVIS
YARON Z REICH
RICHARD S LINCER
STEVEN G HOROWITZ
JAMES A DUNCAN
STEVEN M LOEB
CRAIG B BROD
MITCHELL A LOWENTHAL
EDWARD J ROSEN
LAWRENCE B FRIEDMAN
NICOLAS GRABAR
CHRISTOPHER E AUSTIN
SETH GROSSHANDLER
WILLIAM A GROLL
HOWARD S ZELBO
DAVID E BRODSKY
ARTHUR H KOHN
RICHARD J COOPER
JEFFREY S LEWIS
PAUL J SHIM
STEVEN L WILNER
ERIKA W NIJENHUIS
LINDSEE P GRANFIELD
ANDRES DE LA CRUZ
DAVID C LOPEZ
CARMEN A CORRALES
JAMES L BROMLEY
MICHAEL A GERSTENZANG
LEWIS J LIMAN
LEV L DASSIN

NEIL Q WHORISKEY
JORGE U JUANTORENA
MR HALL D WEINBERGER
DAVID LEINWAND
DIANA L WOLLMAN
JEFFREY A ROSENTHAL
ETHAN A KLINGSBERG
MICHAEL J VOLKOVITSCH
MICHAEL D DAYAN
CARMINE D BOCCUZZI JR
JEFFREY D KARPF
KIMBERLY BROWN BLACKLOW
ROBERT J RAYMOND
LEONARD C JACOBY
SANDRA L FLOW
FRANCISCO L CESTERO
FRANCESCA L ODELL
WILLIAM L MCRAE
JASON FACTOR
MARGARET S PEPONIS
LISA M SCHWEITZER
JUAN G GIRALDEZ
DUANE MCLAUGHLIN
BREON S PEACE
MEREDITH E KOTLER
CHANTAL E KORDULA
BENET J O'REILLY
DAVID AMAN
ADAM E FLEISHER
SEAN A O'NEAL
GLENN P MCGRORY
MATTHEW P SALERNO
MICHAEL J ALBANO
VICTOR L HOU
ROGER A COOPER
AMY R SHAPIRO
JENNIFER KENNEDY PARK
ELIZABETH LENAS
LUKE A BAREFOOT

PAMELA L MARCOGLIESE
PAUL M TIGER
JONATHAN S KOLODNER
DANIEL ILAN
MEYER H FEDIDA
ADRIAN R LEIPSIC
ELIZABETH VICENS
ADAM BRENNEMAN
ARI MACKINNON
JAMES E LANGSTON
RESIDENT PARTNERS

SANDRA M ROCKS
S DOUGLAS BORISKY
JUDITH KASSEL
DAVID E WEBB
PENELOPE L CHRISTOPHOROU
BOAZ S MORAG
MARY E ALCOCK
DAVID H HERRINGTON
HEIDE H ILGENFRITZ
HUGH C CONROY JR
KATHLEEN M EMBERGER
WALLACE L LARSON JR
AVRAM E LUFT
ANDREW WEAVER
HELENA K GRANNIS
GRANT M BINDER
JOHN V HARRISON
CAROLINE F HAYDAY
DAVID FLECHNER
RESIDENT COUNSEL

LOUISE M PARENT
OF COUNSEL

Writer's Direct Dial +1 212 225 2508
E-Mail cboccuzzi@cgsh.com

March 2, 2015

BY EMAIL AND ECF

Honorable Thomas P. Griesa
United States District Court for
the Southern District of New York
500 Pearl Street
New York, New York 10007

Re:  *NML Capital Ltd. v. Republic of Argentina*, Nos. 08 Civ. 6978 (TPG), 09 Civ. 1707 (TPG) and 09 Civ. 1708 (TPG); and related cases

Dear Judge Griesa:

I write to respond to issues raised by plaintiffs in their letter to the Court of last Thursday, February 26, 2015 ("Pl. Ltr.").

As demonstrated in the February 17 briefs of the Republic and Citibank, the $8.4 billion in outstanding Argentine Law Bonds[1] are DFCI, not External Indebtedness, and therefore are not covered by the FAA's *pari passu* clause by its express terms. That is so because, consistent with the definition of DFCI, all of the Argentine Law Bonds were "offered exclusively" in Argentina. FAA at 17 (Ex. ZZ); Republic Br. at 17-22; Citibank Br. at 14-16. Moreover, as to the $2.3 billion in Argentine Law Bonds issued in 2005 and 2010 in exchange for defaulted local Argentine debt (which were also "offered exclusively" in Argentina), those bonds constitute DFCI for the additional reasons that they were issued in exchange for (i) debt

---

[1] Unless otherwise indicated, defined terms have the meanings assigned in the Republic's Memorandum in Further Support of Citibank's Motion to Vacate the July 28 Order and in Opposition to Any Injunctive Relief, dated February 17, 2015 (the "Republic Br."). Unless otherwise indicated, all exhibits are attached to the Declaration of Kristin A. Bresnahan, dated February 17, 2015.

CLEARY GOTTLIEB STEEN & HAMILTON LLP OR AN AFFILIATED ENTITY HAS AN OFFICE IN EACH OF THE CITIES LISTED ABOVE

specifically identified in the FAA as constituting DFCI, and (ii) debt payable in Argentine pesos. FAA at 17 (Ex. ZZ); Republic Br. at 7, 22-23; Citibank Br. at 12-14.

In their February 26 letter, plaintiffs challenge the latter contention – *i.e.*, that the Argentine Law Bonds are DFCI to the extent they were issued in exchange for Argentine debt payable in pesos. Pl. Ltr. at 2. Plaintiffs are wrong.

*First*, plaintiffs are wrong to argue that it is somehow too late to present to the Court the fact that the Argentine Law Bonds were issued in exchange for defaulted indebtedness that in 2002 had been legally made payable in the currency of the Republic – *i.e.* pesified – and therefore that the Argentine Law Bonds satisfied another subparagraph of the definition of DFCI. *See* Pl. Ltr. at 2. Plaintiffs' position makes no sense. The Court continued the September 26 hearing, ordering discovery and further briefing, based on *plaintiffs' request* that the Court "allow the parties an opportunity to develop the record." Sept. 26, 2014 Hr'g Tr. at 41:2 (Ex. E). In particular, plaintiffs told the Court that they wanted to "find out about the nature of [the Argentine Law Bonds] when they were issued, how they were payable, and all of those facts which are necessary to make the distinction [as to which bonds are DFCI]." *Id.* at 22:6-10. The extensive discovery that ensued – including the production of thousands of pages of documents and dozens of Argentine laws, decrees, and resolutions – demonstrated that the defaulted Argentine law bonds were in 2002 made payable in pesos, and Argentine Law Bonds issued in exchange for the defaulted obligations are therefore DFCI. *See* Republic Br. at 10-11, 22. There is no basis for plaintiffs' assertion that Citibank and the Republic should now be foreclosed from presenting these facts to the Court in the briefing that the Court expressly contemplated would follow discovery.

*Second*, plaintiffs are incorrect that the Republic's defaulted Argentine law debt was not "payable in pesos" because the Republic declared a moratorium on its debt in 2001. *See* Pl. Ltr. at 2. The FAA excludes from the *pari passu* clause all debt offered in exchange for debt *payable* in pesos – not *paid* in pesos – and the 2002 pesification made existing Argentine law bonds "payable" in pesos. Republic Br. at 22; Citibank Br. at 13-14. Plaintiffs cannot seriously question that defaulted Argentine law debt remained payable after the Republic's default,[2] and that by virtue of Argentine law – as confirmed by the Argentine Supreme Court – it was payable in pesos.[3] The Argentine Law Bonds denominated in dollars that were subsequently issued in exchange for this defaulted debt therefore fall squarely within the example of foreign currency indebtedness issued in exchange for indebtedness "*payable in* the lawful currency of the Republic." FAA at 17 (Ex. ZZ) (emphasis added). Plaintiffs' argument that the pesification should be disregarded because owners of debt payable in pesos could receive dollar-denominated Argentine Law Bonds ignores the plain language of the FAA that defines as DFCI "indebtedness payable . . . in a currency other than the lawful currency of the Republic of Argentina which is

---

[2] Just as plaintiffs' New York law-governed debt remained "payable" (in dollars) after default.

[3] Foreign currency-denominated debt governed by Argentine law and exempt from the Republic's moratorium was likewise paid in pesos after pesification, thereby refuting any argument that the law did not alter the currency in which Argentine law debt was paid *or* payable. *See* Supplemental Declaration of Juan Duggan ¶¶ 5-10, dated Mar. 1, 2015 (Ex. A to the Letter from K. Wagner to J. Griesa, dated Mar. 2, 2015, Dkt. #751).

. . . (b) issued in payment, exchange, substitution, discharge or replacement of indebtedness payable in the lawful currency of the Republic of Argentina . . . ." *Id.*

Plaintiffs are also wrong that recognizing the Republic's pesification of Argentine law governed debt would somehow violate plaintiffs' rights under the FAA. Pl. Ltr. at 2-3. Nothing in the FAA or the *pari passu* clause prevented the Republic from changing the payment currency of debt governed by Argentine law. Indeed, as Argentine-law governed instruments, this indebtedness was and remains subject to Argentine legislative and judicial processes. No action by the Argentine government with respect to the pesification of this debt has been, or could ever be, claimed to be a breach of any obligation under the FAA. *See* Citibank Br. at 5-6 n.19 ("[g]overnments might use their legislative power to modify the terms of bonds issued under domestic law, thus legalising actions that might otherwise constitute a breach of contract for bonds issued under a foreign law"). Even prior to the Republic's default in 2001, this locally issued, locally offered debt was plainly DFCI and therefore not External Indebtedness. *See* Republic Br. at 8-9. Once the debt was pesified, and therefore payable in Argentine pesos, it also failed to meet the definition of External Indebtedness (which requires that the debt be payable in a non-Republic currency) for that reason as well, as plaintiffs have already conceded. *See* Pl. Br. at 7, July 11, 2014, Dkt. #586 (conceding that indebtedness payable in pesos is not External Indebtedness). It would be wholly contrary to the FAA's definition of DFCI to argue, as plaintiffs do here, that debt issued in exchange for these non-External Indebtedness obligations must somehow be classified now as External Indebtedness.

In any event, all of the Argentine Law Bonds constitute DFCI because they were "offered exclusively in Argentina." Republic Br. at 17-22; Citibank Br. at 14-16. Plaintiffs claim that the Argentine Law Bonds were offered outside of Argentina because some beneficial owners of the debt reside outside of Argentina, *see* Pl. Br. at 15-16, 20-21, 23-25, but the FAA's definition of DFCI does not hinge on whether owners are Argentine or non-Argentine. Unlike other sovereign borrowers that issued debt in 1994 and chose a definition of External Indebtedness that explicitly hinged on the bondholders' nationality, *see* Republic Br. at 20-21, the FAA contains a narrower definition of External Indebtedness that focuses instead on *where the indebtedness was offered*. *See* FAA at 17 (Ex. ZZ) (defining DFCI as, *inter alia*, "indebtedness . . . offered exclusively within the Republic of Argentina"); Republic Br. at 20-22.

As the Court correctly found the first time it was presented with plaintiffs' arguments that the Argentine Law Bonds were covered by the Amended Injunctions, these bonds are in fact different and have always been treated as such. *See* June 27, 2014 Hr'g Tr. at 26:23-24 (Ex. 6 to the Declaration of Charles E. Enloe, dated February 17, 2015). The Court has since repeatedly reiterated that correct view. And indeed the differences between the New York law governed "Exchange Bonds" issued to owners of defaulted FAA debt and the Argentine Law Bonds offered locally and in exchange for other local debt further confirm that conclusion.

That these obligations satisfy not just one, but several of the definitions of DFCI in the FAA, definitively refutes plaintiffs' contention that the *pari passu* clause may be extended to enjoin payment on the Argentine Law Bonds. *See* Republic Br. at 15, 10-11; Citibank Br. at 5-6 n.19.

Respectfully submitted,

Carmine D. Boccuzzi

cc: Counsel of Record (by ECF)